[Cite as *State v. Burns*, 2024-Ohio-1669.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 23AP-336 |
| | | (M.C. No. 2022 CRB 004030) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Derron D. Burns, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 30, 2024

**On brief:** *Zachary M. Klein*, City Attorney, *Melanie R. Tobias-Hunter*, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni.*

**On brief:** *Campbell Law, LLC*, and *April F. Campbell*, for appellant. **Argued:** *April F. Campbell.*

APPEAL from the Franklin County Municipal Court

JAMISON, J.

{¶ 1} Defendant-appellant, Derron D. Burns, appeals from a judgment of the Franklin County Municipal Court, convicting appellant of violating a Civil Protection Order ("CPO"), in violation of R.C. 2919.27. For the following reasons, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} There is no dispute that in 2020, the victim, J.W., obtained a CPO prohibiting appellant, her ex-boyfriend, from contacting her directly or through another person, including sending messages to her directly or through another person. The stated period of the CPO is five years, from July 1, 2020 to July 1, 2025. Appellant stipulated he was properly served with the CPO on July 1, 2020.

{¶ 3} According to J.W., she lived with appellant for about seven or eight months, and they were engaged for a short time. J.W. testified she ended their relationship in May 2020, and she sought a CPO because she was afraid of appellant and there had been violence in the relationship.

{¶ 4} On March 19, 2022, the victim's sister, C.M., stopped at a Turkey Hill gas station to get gas. Appellant was working at the same Turkey Hill gas station as a cashier at the register on that day. As C.M. was paying for gas at the register, appellant told C.M. to relay a message to J.W. According to C.M., appellant stated: "Tell that bitch to give me my fucking car, and I still know where she stays at." (Tr. Vol. II at 148.) Appellant also said that he "would fuck her up," which C.M. perceived as a threat to J.W. (Tr. Vol. II at 149.)

{¶ 5} C.M. testified at trial that she was afraid for J.W. because appellant stated he knew where she lived, and he intended to inflict harm on her. According to C.M., appellant's tone was "firm," "loud," and "aggressive." (Tr. Vol. II at 148-49.) C.M. agreed with appellant's trial counsel when asked if appellant "is a pretty big guy, six foot three, at one point, 300 pounds[.]" (Tr. Vol. II at 161.) C.M. testified she just wanted to pay for gas and leave, so she responded, "okay," gave appellant money for gas, and left the gas station. (Tr. Vol. II at 149.)

{¶ 6} C.M. testified she did not call the police that night because she was not personally threatened by appellant, and she was not aware that her sister's CPO prohibited "third-party threats." (Tr. Vol. II at 202.) C.M. recalled she did not call J.W. that night because she was going barhopping, it was late, and she thought J.W. would be asleep. C.M. testified she did call J.W. the next morning and told her about appellant's threat.

{¶ 7} J.W. testified she contacted the prosecutor's office, who advised her to have C.M. report the incident to the police because C.M. witnessed the threat. C.M. then made a 911 call to the police. A recording of the 911 call was admitted into evidence as plaintiff-applee, State of Ohio's, exhibit 1.

{¶ 8} On March 24, 2022, J.W. and C.M. met with police. Columbus Police Officer, Heidi Graber, testified she spoke to both J.W. and C.M., reviewed the CPO, and verified the CPO was "active." (Tr. Vol. III at 289.) Officer Graber subsequently charged appellant with a violation of the CPO.

{¶ 9}  The case proceeded to a jury trial on April 24, 2023.  The state presented testimony from J.W., C.M., and officer Graber.  The defense presented one witness, Stacey Walker, a representative of the third-party company that provided security services to the Turkey Hill gas station on the night of the incident.  Walker testified there were no reports of an incident at the gas station on the night in question.

{¶ 10} On April 26, 2023, the jury found appellant guilty of violating the CPO.  On May 11, 2023, the trial court sentenced appellant to 180 days in jail with jail-time credit of 81 days.  Appellant timely appealed to this court from the May 11, 2023 judgment.

## II.  ASSIGNMENTS OF ERROR

{¶ 11} Appellant assigns the following five assignments of error for our review:

> [1.] Burns' convictions should be reversed because the prosecutor indoctrinated the jury in voir dire, substantially affecting Burns' right to a fair trial.
>
> [2.] The trial court impermissibly allowed the State to adduce other acts evidence of another worse threat, which was unfairly prejudicial to Burns.
>
> [3.] It is prejudicial error for the prosecution to use the officer to vouch for witness credibility, and argue that the jury should find their testimony credible, because the officer found it credible.
> [4.] Trial counsel was ineffective for his consistent failure to object when he needed to, prejudicing Burns.
>
> [5.] Burns was denied his right to a fair trial through cumulative error.

## III.  LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 12} In appellant's first assignment of error, appellant contends the trial court erred when it permitted the prosecutor to indoctrinate the jury panel during voir dire.  We disagree.

{¶ 13} Appellate courts are bound by a narrow standard in reviewing claimed voir dire errors.  *Burke v. Schaffner*, 114 Ohio App.3d 655 (10th Dist.1996).  The scope of voir dire falls within a trial court's discretion and varies with the circumstances of a particular case.  *Id.*, citing *State v. Lundgren*, 73 Ohio St.3d 474, 481 (1995), citing *State v. Bedford*,

39 Ohio St.3d 122, 129 (1988). Here, however, because appellant's trial counsel did not object to the prosecutor's comments in this case, we must apply a plain error standard of review. *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 126.

{¶ 14} "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. "To successfully assert that a trial court committed plain error, a defendant must show an error that constitutes an obvious defect in the trial proceedings and demonstrate that the error affected the outcome of the trial." *State v. Gordon*, 152 Ohio St.3d 528, 2018-Ohio-259, ¶ 23, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22.

{¶ 15} During voir dire, the prosecutor made the following comments to the jury panel:

> *The defendant is charged with violation of a protection order today, making a threat through a third party. Specifically, the defendant told his ex-girlfriend's sister, [C.M.], that he would "F" her up, and he still knows where she stay[s] at.*
>
> The defendant and [J.W] had been in a relationship in the past, and after that relationship had terminated, [J.W.] sought an order of protection from the Court, and that was granted to her and served upon the defendant July 1st of 2020, and is in effect until July 1st of 2025. So -- and that order makes it illegal for Mr. Burns to have any contact whatsoever with [J.W.], either directly or indirectly through a third party.
>
> And just for your information, the events of this case took place on March 19th, 2022, and [C.M.] reported this to [J.W.], who then reported that to the police. But it took a few days, March 24th is when they actually got it all squared away.

(Emphasis added.) (Tr. Vol. I at 36.)

{¶ 16} In *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 52, the Supreme Court of Ohio concluded that it is improper for defense counsel, in the penalty phase of a capital case, to seek a commitment from prospective jurors on whether they would find specific evidence mitigating. However, the Supreme Court also concluded that the trial court erred in denying counsel's request to present uncontested facts to the venire directed at revealing prospective jurors' biases.

{¶ 17} Here, the state presented uncontested facts to the jury panel about the CPO, but also presented certain facts of the case that were in dispute. However, the prosecutor's statement regarding the facts of the case was made in the context of explaining the pending charges, and not for the purpose of urging the jury panel to adopt those facts. Indeed, the facts revealed by the prosecutor were the same basic facts of the case alleged in the Bill of Particulars filed in the Municipal Court on March 28, 2023. Moreover, the prosecutor followed the comments at issue with an inquiry as to whether any of the prospective jurors knew J.W. or C.M. Thus, the comments were arguably made for the permissible purpose of revealing potential juror bias based on their familiarity with the incident or the witnesses in the case. *See State v. Tyler*, 50 Ohio St.3d 24, 32 (1990) (it was not plain error for the prosecutor to provide the venire with basic facts about the incident and the victim's identity to root out any potential juror bias); *State v. Lyons*, 7th Dist. No. 16 JE 0008, 2017-Ohio-4385 (no error occurred, let alone plain error, when the prosecutor presented uncontested facts to the venire about the crimes which were confirmed by witnesses during its case in chief).

{¶ 18} Based on the foregoing, we cannot say the trial court committed error by permitting the prosecutor's inquiry during voir dire, let alone plain error. Accordingly, we overrule appellant's first assignment of error.

### B. Appellant's Second Assignment of Error

{¶ 19} In his second assignment of error, appellant argues the trial court erred by allowing the state to produce inadmissible other-acts evidence that unfairly prejudiced his defense. More particularly, appellant argues that the trial court permitted the state to elicit testimony from J.W. about an alleged prior violation of the CPO by appellant.

{¶ 20} During the state's examination of J.W., the prosecutor inquired about the circumstances surrounding the 2020 CPO:

> [STATE]: And there was violence in the relationship. Is that fair to say?
>
> [DEFENSE COUNSEL]: Objection.
>
> [J.W.]: Yes.
>
> * * *

> [STATE]: Why -- why were you afraid and checking the doors, [J.W.]?
>
> [J.W.]: A previous threat that I have gotten towards my life after the protection order, something like ha, ha, ha kill, kill, kill.

(Tr. Vol. II at 209, 242.)

{¶ 21} Ordinarily, "an appellate court is to apply an abuse-of-discretion standard of review when considering an assignment of error that claims that the trial court improperly admitted evidence of other acts to prove the character of a person in order to show action in conformity therewith." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 23. The state maintains the plain error standard applies because defense counsel failed to specify Evid.R. 404(B) as the basis of the objection. *See State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 30.

{¶ 22} Initially, we note the CPO issued by the court and admitted into evidence as state's exhibit 2 provides in relevant part as follows: "Petitioner was placed in fear of imminent serious physical harm by the threats/action of [appellant] and that this fear is objectively reasonable given the circumstances." (State's Ex. 2 at 2.) Because it was undisputed there was some degree of violence in the relationship between appellant and J.W., the prosecutor's inquiry about J.W.'s fear of appellant merely sought evidence that was cumulative in nature. J.W.'s response, however, introduced a prior specific instance of an alleged violation by appellant of the CPO. As such, her testimony about the alleged violation was arguably inadmissible under Evid.R. 404(B). (Addressing and explaining the circumstances listed in Evid.R. 404(B) when other-acts evidence may be admissible.).

{¶ 23} The state argues that defense counsel opened the door for this other-acts evidence by its cross-examination of J.W. We agree.

{¶ 24} On direct examination, J.W. explained she did not immediately contact police after learning of appellant's threat because she was not aware that threats communicated to her through others would violate the order. She testified she was, nevertheless, fearful of appellant in the days before she made the call to police. To undermine J.W.'s claims, appellant's trial counsel inquired as follows:

> [DEFENSE COUNSEL]: You stated that you were scared, correct?

[J.W.]: Yes.

[DEFENSE COUNSEL]: You stated that you were paranoid?

[J.W.]: Yes.

[DEFENSE COUNSEL]: You stated -- You also said that you were -- you have to doublecheck your locks --

[J.W.]: Yes.

[DEFENSE COUNSEL]: -- and the entrances to your house?

[J.W.]: Yes.

[DEFENSE COUNSEL]: Yet you waited to call the -- you waited to call the police, didn't you?

[J.W.]: I didn't wait, no. I wanted to make sure it was correct before I -- I didn't want to file a false report.

[DEFENSE COUNSEL]: So, ma'am, that wasn't -- Let me reask the question. You waited to call the police. That wasn't your first call, was it?

[J.W.]: What do you mean did I wait to call the police?

[DEFENSE COUNSEL]: When you allegedly were informed by [C.M.] of this event, did you call the police with -- while you were scared, right? Yes or no?

[J.W.]: No.

[DEFENSE COUNSEL]: No. Thank you. And so you were -- you were that scared that you just didn't call the police, correct?

[J.W.]: Yes.

[DEFENSE COUNSEL]: And you -- It was your testimony that you left a voicemail on someone's phone, correct?

[J.W.]: No.

[DEFENSE COUNSEL]: Who did you call?

[J.W.]: I called the prosecutor's office, and I talked to someone, and I waited for her to give me a call back.

[DEFENSE COUNSEL]: So in that time you diligent -- You just waited?

[J.W.]: I didn't actually wait. I left my home and went somewhere I felt safe at until I was able to reach the prosecutor.

[DEFENSE COUNSEL]: So when you said that you didn't move, that was not correct?

[J.W.]: I didn't move. I was gone for overnight, that's not moving.

[DEFENSE COUNSEL]: So you were gone for one night --

[J.W.]: Yes.

[DEFENSE COUNSEL]: -- right? Yet, from the alleged event to when there's police interaction is about five to six days, correct?

[J.W.]: I don't think so, no.

[DEFENSE COUNSEL]: So, ma'am, so the police -- the interaction at the Turkey Hill, would you agree with me that happened on the 19th?

[J.W.]: Yes.

[DEFENSE COUNSEL]: So there's the 20th, right? Correct? Which -- and then the 21st, 22nd, 23rd and the 24th. You went for one day out of those six --

[J.W.]: Yes.

[DEFENSE COUNSEL]: -- correct? Okay. And yet in the -- You state that you're -- that you were scared -- but yet you're -- you didn't have your civil protection order?

[J.W.]: I have a dog. I have a pit bull at home now.

* * *

[J.W.]: During the six days, it was in my possession inside of my car.

[DEFENSE COUNSEL]: So what you're saying is that you were so scared you couldn't find your civil protection order in your house, so you found one in the trunk of your car?

[J.W.]: Yes.

* * *

[DEFENSE COUNSEL]: Ma'am, just to go back to the timeline of the events. All right. You were informed -- When were you informed by [C.M.] of this alleged -- this alleged event happening?

[J.W.]: I believe it was on that Sunday.

[DEFENSE COUNSEL]: Sunday, correct? All right. And at that point, you stated that you were scared?

[J.W.]: Yes.

[DEFENSE COUNSEL]: Right? And then you called the prosecutor's office that day, correct?

[J.W.]: I called the prosecutor's office that Monday.

[DEFENSE COUNSEL]: So -- at one -- so -- And you stated that you talked to your sister every day, correct?

[J.W.]: Yes.

[DEFENSE COUNSEL]: So -- and that Sunday to Monday timeframe, did you tell your sister to call the police?

[J.W.]: Um, that Monday -- that Tuesday, I'm sorry.

[DEFENSE COUNSEL]: Tuesday. And by Tuesday you were already back at your residence, correct?

[J.W.]: Yes.

[DEFENSE COUNSEL]: So Tuesday you didn't call the police?

[J.W.]: Yes.

[DEFENSE COUNSEL]: Did you bring any record of that?

[J.W.]:  I don't have anything with me.

[DEFENSE COUNSEL]:  And so still scared on Tuesday?  Were you still scared on Wednesday?

[J.W.]:  Yes.

[DEFENSE COUNSEL]:  Did you do anything different than on Tuesday?

[J.W.]:  The police were called that Tuesday.

[DEFENSE COUNSEL]:  On Wednesday, ma'am. Wednesday. Did you do anything different Wednesday?

[J.W.]:  No, the same; making sure doors were locked, windows were locked. Making sure there was a stick in my back door.

* * *

[DEFENSE COUNSEL]:  You didn't find it prudent to stay away since you were so scared?

[J.W.]:  I stayed away. I stayed away.

[DEFENSE COUNSEL]:  And just to rehash, you only stayed away for one day, correct?

[J.W.]:  Away from my home?

[DEFENSE COUNSEL]:  Yes.

[J.W.]:  Yes.

(Tr. Vol. II at 226-35.)

{¶ 25} Defense counsel's strategy on cross-examination was to undermine J.W.'s credibility, by pointing out her delay in reporting appellant's alleged threat was inconsistent with her claim that she feared him.  Defense counsel wished to prove circumstantially that the lack of diligence in reporting the incident was due to the falsity of the report.  In our view, defense counsel opened the door for the prosecutor to inquire on redirect whether J.W. was truly fearful of appellant due to the recent threat.  *See State v. Camilo*, 5th Dist. No. 22CA15, 2023-Ohio-3067, ¶ 55 (where defendant was charged with assault and witness intimidation, defense counsel opened the door for the victim to testify about prior acts of

violence by defendant when counsel asked the victim if she had ever called police on the defendant before). Accordingly, we find the prosecutor's line of inquiry on redirect was fair and reasonable in view of defense counsel's efforts to discredit J.W.

{¶ 26} Because defense counsel opened the door for the other-acts evidence, appellant's assignment of error is without merit whether we apply the plain error standard of review or the abuse of discretion standard. Appellant's second assignment of error is overruled.

### C. Appellant's Third Assignment of Error

{¶ 27} In appellant's third assignment of error, appellant contends the trial court erred by permitting officer Graber to testify regarding the credibility of C.M.'s report to the police. We disagree.

{¶ 28} This court has set forth the prevailing law on this issue as follows:

> On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. In our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses. Opinion testimony regarding another witness's credibility infringe[s] upon the role of the fact finder, who is charged with making determinations of veracity and credibility. Thus, the opinion of a witness as to whether another witness is being truthful is inadmissible. When such testimony is admitted, it is subject to a harmless error analysis on review.

(Internal citations and quotations omitted.) *State v. Smith*, 10th Dist. No. 16AP-21, 2017-Ohio-9283, ¶ 46.

{¶ 29} During the prosecutor's redirect examination of officer Graber, the following exchange occurred:

> [PROSECUTOR]: Throughout these 22 years of experience, would you say -- would you say that you have experience in being able to tell whether someone is lying to you or not?
>
> [OFFICER GRABER]: Yes. And I'm a mom.
>
> [PROSECUTOR]: And you're a mom. Is that a regular part of your investigations --
>
> [OFFICER GRABER]: Yes.

[PROSECUTOR]: -- determining credibility with someone?

[OFFICER GRABER]: Yes.

[PROSECUTOR]: And for a violation of a protective order, what do you consider -- I know you guys spoke about, you know, whether, yes or no, you have investigations, but what would you consider an investigation into figuring out whether a VPO was violated?

[OFFICER GRABER]: See what the complainant says and compare it to the protection order to see if it's a violation.

[PROSECUTOR]: And is evaluating the person's credibility as [they're] telling you what might have been a violation, is that part of your investigatory process?

[OFFICER GRABER]: To a point. Like I said before, if we think it's completely, like, erroneous, we're not going to do it. Like, I'll take a report and refer you to the prosecutor's office, but if we have enough to believe we can file charges, then that's the preferred course of action and we do it.

[PROSECUTOR]: And for 22 years is that how you've done it?

[OFFICER GRABER]: Yes.

[PROSECUTOR]: You said that you need enough to file charges. What is enough when it comes to a VPO violation?

[OFFICER GRABER]: That it was violated.

[PROSECUTOR]: Okay. So in this case -- You just described to us what you think a VPO violation -- CPO violation investigation would be. So in this case, do you believe that you completed that investigation?

[OFFICER GRABER]: Yes.

[PROSECUTOR]: And you were able -- were you able to sign your name to this and put out a warrant based on you believing [J.W] and [C.M.]?

[DEFENSE COUNSEL]: Objection, Your Honor, these are leading questions.

[THE COURT]: Overruled.

[PROSECUTOR]: So were you able to sign your name to this and put out a warrant based on the credibility of [J.W.] and [C.M.]?

[OFFICER GRABER]: Yes.

(Tr. Vol. III at 321-23.)

{¶ 30} The prosecutor also mentioned officer Graber's opinion of C.M.'s credibility during closing argument. Appellant contends that the trial court erred by permitting the prosecutor to elicit an opinion from officer Graber as to C.M's credibility. The state argues that defense counsel opened the door to this line of inquiry by raising the issue during officer Graber's cross-examination. We agree.

{¶ 31} The issue raised by appellant's assignment of error was previously addressed by this court in *State v. Bartlett*, 10th Dist. No. 10AP-1001, 2011-Ohio-3599. In *Bartlett*, defendant was charged with domestic violence and assault after police and fire department personnel responded to a complaint by defendant's wife. At trial, the defense's theory was predicated on the wife's alleged lack of credibility. During opening statements at trial, defense counsel told the jurors that certain professionals who were called to the scene did not believe the wife's claims. At trial, the prosecutor asked one of the responding officers, over defendant's objection, whether he believed the wife's story. The trial court overruled the objection upon finding defense counsel's opening statement opened the door for the prosecutor to elicit a subjective opinion as to the wife's credibility. The jury found defendant guilty of domestic violence and assault.

{¶ 32} On appeal, defendant argued the trial court erred by permitting the prosecutor to elicit opinion testimony as to the wife's credibility. This court held that, because defense counsel's opening statement referenced the subjective belief of certain witnesses that defendant's wife was not telling the truth, the trial court did not abuse its discretion by allowing the prosecutor to ask another witness if they believed the wife was truthful. *Id.* at ¶ 9. In *Bartlett*, we stated: "Having made that assertion in opening statement as to what the evidence would show, defense counsel was not in a position to ask the trial judge to block the jury from hearing evidence that part of counsel's opening statement was simply false. Counsel had clearly opened the door to this inquiry." *Id.* at ¶ 8.

{¶ 33} Here, defense counsel first raised the question of C.M.'s credibility in cross-examining officer Graber:

> [DEFENSE COUNSEL]: So based on the few minutes of conversation you actually had about the incident that took place, allegedly at the Turkey Hill, that was enough for you to say that he did it?
>
> [OFFICER GRABER]: Right.
>
> * * *
>
> [DEFENSE COUNSEL]: And in the situations where you filed charges, is that because you believed what the person said?
>
> [OFFICER GRABER]: We have to have probable cause to file charges. So if l believe I have probable cause, then, yes.
>
> * * *
>
> [DEFENSE COUNSEL]: In your 22 years, how do you tell if someone is lying or not?
>
> * * *
>
> [OFFICER GRABER]: [I]t's pretty obvious if someone is lying.
>
> * * *
>
> [DEFENSE COUNSEL]: So would -- Have you ever filed charges when you didn't believe the person?
>
> [OFFICER GRABER]: No.
>
> [DEFENSE COUNSEL]: So filing -- Someone would be charged with something based on your sole discretion of whether you believe the person that is telling you the information?
>
> [OFFICER GRABER]: Depends on the crime, but yeah, could be.

(Tr. Vol. III at 309, 312, 314-15.)

{¶ 34} The line of questioning employed by defense counsel was designed to elicit an opinion from officer Graber that C.M. and J.W. lacked credibility. Thus, officer Graber's ability to judge the credibility of witnesses who reported a crime was an issue raised by

defense counsel.  Under the circumstances, there was no trial court error in allowing the prosecutor to follow up on the line of questioning initiated by defense counsel.  *See Bartlett* at ¶ 8.

{¶ **35**} For the foregoing reasons, appellant's third assignment of error is overruled.

**D. Appellant's Fourth Assignment of Error**

{¶ **36**} In appellant's fourth assignment of error, appellant contends his trial counsel provided ineffective assistance by failing to object to inadmissible evidence.  We disagree.

{¶ **37**} "*Strickland v. Washington* (1984), 466 U.S. 668, * * * establishes the standard for judging ineffective-assistance claims." *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, ¶ 5; *see also Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a defendant claiming ineffective assistance of counsel "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland* at 688.  The defendant must also show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

{¶ **38**} Appellant claims his counsel provided ineffective assistance by failing to object to the other-acts evidence addressed in appellant's second assignment of error and to the alleged vouching evidence addressed in appellant's third assignment of error. Appellant does not claim that trial counsel performed deficiently by eliciting the testimony that opened the door for this evidence.

{¶ **39**} Because we have determined the specific testimony cited by appellant was admissible at trial, there is no merit to appellant's claim that his trial counsel performed inadequately by failing to object.  Moreover, "[t]he extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146.  " '[A]n appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination.' " *State v. Dorsey*, 10th Dist. No. 04AP-737, 2005-Ohio-2334, ¶ 22, quoting *In re Brooks*, 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 40.  *See also State v. Allah*, 4th Dist. No. 14CA12, 2015-Ohio-5060, ¶ 23.

{¶ **40**}   The credibility of J.W. and C.M. was the primary issue in this case, and it was certainly reasonable for defense counsel to cross-examine the state's witnesses in a manner designed to cast doubt on their testimony.  "In Ohio, it is often difficult for attorneys in criminal trials to anticipate how a witness called by the opposing party will respond to questions because, unlike in civil cases, the Ohio Rules of Criminal Procedure do not provide for pre-trial discovery depositions."  *State v. Harris*, 10th Dist. No. 21AP-678, 2023-Ohio-3994, ¶ 108.   Under the circumstances, we cannot say defense counsel's cross-examination of the state's witnesses constituted deficient performance under *Strickland*.  Appellant's fourth assignment of error is overruled.

### E. Appellant's Fifth Assignment of Error

{¶ **41**}   In appellant's fifth assignment of error, appellant contends he was denied his right to a fair trial through cumulative error.  We disagree.

{¶ **42**}   Under the doctrine of cumulative error, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal."  *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 223.  *See also State v. Garner*, 74 Ohio St.3d 49, 64 (1995).  To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors. *State v. Fletcher*, 2d Dist. No. 28829, 2021-Ohio-1515, ¶ 16; *State v. Stober*, 3d Dist. No. 12-13-13, 2014-Ohio-5629, ¶ 15.

{¶ **43**}   Having determined that the trial court did not err in the manner suggested by appellant in his other assignments of error, appellant's claim for relief under the cumulative error doctrine must fail.  Accordingly, we overrule appellant's fifth assignment of error.

## IV.  CONCLUSION

{¶ **44**} Having overruled appellant's five assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

LUPER SCHUSTER and BOGGS, JJ., concur.

————————————