[Cite as *State v. Jones*, 2025-Ohio-4317.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

STATE OF OHIO,                          :

      Plaintiff-Appellee,          :          Case No.  23CA19

      v.                                  :

                                          :          <u>DECISION AND JUDGMENT</u>
DAKOTA S. JONES,                        :          <u>ENTRY</u>

      Defendant-Appellant.         :
_____

APPEARANCES:

Elizabeth Miller Ohio State Public Defender, Renee Severyn, Assistant
Public Defender, Columbus, Ohio, for Appellant.

Randy Dupree, Jackson County Prosecuting Attorney, Jackson, Ohio, for
Appellee.
_____

Smith, P.J.

{¶1} Dakota Jones, "Jones," appeals the November 16, 2023 Uniform
Sentencing Entry of the Jackson County Court of Common Pleas.  Jones was
found guilty by a jury of one count of Failure to Comply with an Order or
Signal of Police Officer, in violation of R.C. 2921.331(B), a felony of the
third degree.  Jones raises three assignments of error challenging the
handling of voir dire; the effectiveness of his legal representation; and his
maximum sentence.  Based on our review of the record, we find no merit to

the arguments raised within Jones' assignments of error. Accordingly, we overrule all assignments of error and affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} After leading officers of the Wellston Police Department (WPD) on a high-speed chase through the city of Wellston, Jones and three passengers crashed a white Impala off the right side of State Route 327 near Jack Vaughn Road. As a result, Jones was indicted on one count of Failure to Comply with Order or Signal of Police Officer. The following facts are gleaned from the testimony of witnesses at Jones' one-day jury trial.

{¶3} Officer Terry Fletcher of the WPD began by identifying Jones in the courtroom. Officer Fletcher testified that on March 23, 2023, he was on duty in his uniform and in a marked cruiser, aware that the Jackson County Sheriff's Office was looking for a white Impala. Officer Fletcher observed a white Impala at a Speedway gas station. Jones checked the license plate, which did not report as a white Impala but rather as a 1991 black two-door Acura. Nevertheless, Fletcher made no further attempt to investigate the white car.

{¶4} Later, around 2:30 a.m., Officer Fletcher again observed a white Impala, this time being driven at a high rate of speed. Officer Fletcher maneuvered behind the white car on Wisconsin Avenue in Wellston. Using

radar, Fletcher gauged the speed of the white car at 47 mph in a 25-mph zone. The road conditions at the time were very slick due to light rain. Officer Fletcher activated his lights and siren and began to pursue the white car.

{¶5} The driver of the white Impala did not slow or stop but, instead, accelerated beyond 47 mph. A chase ensued as Officer Fletcher continued to follow the white car through Wellston. During the pursuit, the driver of the white car failed to stop at four stop signs. When the white car entered a 35-mph zone, Officer Fletcher testified that he traveled 70 mph in order to keep pace.

{¶6} The white Impala eventually entered State Route 327, a two-lane road where the speed limit increased to 55 mph. Officer Fletcher observed the white car being operated left of center at times. Despite traveling at unsafe speeds, the driver hit the brakes. Fletcher opined the braking was likely an effort to delay him or damage his cruiser.

{¶7} Thereafter, Officer Brant Derrow joined in the chase. The chase ended when the driver of the white car failed to negotiate a turn, rolled over an embankment and down a hill, and overturned on the right side of the road. The white car came to rest on its top.

{¶8} Officer Fletcher estimated the chase lasted about five minutes and covered about five miles. Fletcher testified that after the crash it took him 5 to 10 seconds to approach and check the passengers in the white vehicle. Fletcher testified he observed four people in the car: Jones, Ashley Brown, James Friend, and a three-year-old child. Fletcher testified half of Jones' body was in the driver's seat. Ashley Brown was in the passenger front seat. James Friend and the young child were in the back seat. All occupants of the white vehicle were transported to the hospital.

{¶9} After the crash Officer Fletcher again checked the license plate of the white car. This time the white car was reported as owned by Ashley Brown. Fletcher also learned that Jones had active warrants. Officer Fletcher identified photographs of the white Impala.

{¶10} Upon cross-examination, Officer Fletcher acknowledged that when he initially saw the white car at Speedway he could not see who was driving it. When the white car passed him later, at 2:30 a.m. in the darkness, Fletcher admitted he did not get a good look at the driver. Fletcher admitted his body camera did not fully capture the chase and did not capture footage of the driver inside the car. Fletcher was not able to see inside the driver's side of the car during the pursuit. Defense counsel played a portion of Fletcher's body camera footage. Fletcher admitted it showed Jones' body

hanging out of the passenger side of the vehicle. However, on redirect, Officer Fletcher clarified that the lower half of Jones' body was in the driver's seat.

{¶11} Officer Brant Derrow of the WPD testified that he joined in the high-speed chase and observed the driver of the white Impala committing multiple traffic violations. Derrow also observed the rollover crash. Officer Derrow testified he reached the vehicle about 20-30 seconds after the crash. Derrow saw a child hanging upside down in the back seat by her seatbelt. James Friend was also located in the back seat. Similarly, Derrow testified Jones' legs were under the steering wheel, but he was lying across the front passenger seat. Officer Derrow also identified photographs of the white Impala and identified Jones in the courtroom as the driver.

{¶12} On cross-examination, Officer Derrow admitted that he was not able to positively identify the driver of the white Impala while the vehicle was in motion. Jones was transported from the scene before Derrow had a chance to speak with him. Derrow admitted that several minutes of body camera footage were missing from the time he spoke to Ashley Brown at the scene.

{¶13} Ashley Brown testified that at the time of the accident she was in a relationship with Jones. She did not want to be at the trial. During the

high-speed chase, Brown's daughter and James Friend were in the back seat. Jones was driving and she was a passenger in the front seat. She could not recall lights and sirens. Brown testified she did not recall telling Officer Derrow at the scene that Jones was the driver. Brown also did not recall telling another officer, Sergeant Shong, in a recorded phone conversation, that Jones was the driver.

{¶14} On cross-examination, Brown testified that she drove the white car away from Speedway. Brown also admitted that she was in active addiction at the time the accident happened, and that her memory may have been affected. During redirect, the jurors were excused and the prosecutor refreshed Brown's memory by playing the recorded phone conversation with Sergeant Shong. When the jurors returned, she recalled her conversation with Shong and that she told him Jones was the driver. On recross, Brown was forced to admit that she was investigated by Child Protective Services (CPS) as a result of the accident. She also testified she spent six months in treatment after the accident.

{¶15} At the close of the State's case, defense counsel moved for dismissal under Crim.R. 29, arguing that there was scant evidence to suggest beyond a reasonable doubt that Jones was the driver. Counsel also asserted that serious physical harm had not been proven. The motion was overruled.

{¶16} Following deliberations, the jury returned a guilty verdict. On November 16, 2023, Jones was sentenced. The trial court imposed a maximum sentence of 36 months in prison.

{¶17} This timely appeal followed. Additional facts are set forth below where pertinent.

## ASSIGNMENTS OF ERROR

I. THE TRIAL COURT'S FAILURE TO INFORM POTENTIAL JURORS OF THE PENDING CHARGE BEFORE OR DURING VOIR DIRE DEPRIVED BOTH JONES AND THE COURT OF THEIR ABILITY TO MAKE INFORMED STRIKES, VIOLATING JONES' RIGHT TO A FAIR TRIAL.

II. DEFENSE COUNSEL'S MISTAKES AND INACTION, WHEN CONSIDERED TOGETHER, DEPRIVED JONES OF THE EFFECTIVE ASSISTANCE OF COUNSEL.

III. THE COURT FAILED TO CONSIDER THE STATUTORY SENTENCING FACTORS REQUIRED BY R.C. 2921.331(C)(5)(b).

## ASSIGNMENT OF ERROR ONE - VOIR DIRE

### A. Legal Principles

{¶18} The Sixth Amendment guarantees the right to trial "by an impartial jury" in federal criminal prosecutions. "Because 'trial by jury in criminal cases is fundamental to the American scheme of justice,' the Due Process Clause of the Fourteenth Amendment guarantees the same right in

state criminal prosecutions." *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 551 (1976), quoting *Duncan v. Louisiana,* 391 U.S. 145, 149 (1968). The Ohio Constitution provides that "[t]he right of trial by jury shall be inviolate," Ohio Const., Art. I, § 5, and guarantees the accused "an impartial jury." Ohio Const., Art. I, § 10. *See State v. Dennison,* 2025-Ohio-139, ¶ 35 (4th Dist.).

{¶19} "To safeguard this constitutional right, the General Assembly has provided for peremptory challenges and challenges for cause." *State v. Anderson,* 30 Ohio St.2d 66, 71 (1972), citing R.C. 2945.21, R.C. 2945.22 (now repealed), and R.C. 2945.25. R.C. 2313.17(B) sets forth circumstances which constitute "good causes for challenge to any person called as a juror," and R.C. 2945.25 and Crim.R. 24(C) each set forth additional lists of causes that constitute grounds to challenge a person called as a juror in a criminal case. *See Dennison* at ¶ 36. The scope of voir dire varies with the circumstances of a particular case. *State v. Lundgren*, 73 Ohio St.3d 474, 481 (1995), citing *State v. Bedford,* 39 Ohio St.3d 122, 129 (1988).

{¶20} "Generally, trial courts 'have wide discretion to design and direct voir dire procedures in their courts.' " *Dennison* at ¶ 37, quoting *Crumley v. McCloud,* 2020-Ohio-2737, ¶ 9 (10th Dist.). Trial courts also

have discretion in resolving challenges for cause as they involve a judgment on credibility, and the court sees and hears the jurors. *See State v. Knuff,* 2024-Ohio-902, ¶ 75, citing *State v. Madison,* 2020-Ohio-3735, ¶ 42. Appellate courts are bound by a narrow standard in reviewing claimed voir dire errors. *See State v. Burns,* 2024-Ohio-1669, ¶ 13. (Citation omitted.)

{¶21} Here, because Jones' trial counsel did not object and call attention to this alleged omission, we review the issue now for plain error. *State v. Ford,* 2019-Ohio-4539, ¶ 126. Pursuant to Crim.R. 52(B), we may notice plain errors or defects affecting substantial rights. " 'Inherent in the rule are three limits placed on reviewing courts for correcting plain error.' " *State v. Black,* 2013-Ohio-2105, ¶ 21 (4th Dist.), quoting *State v. Payne,* 2007-Ohio-4642, ¶ 15. " 'First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' " *Id.* at ¶ 16, 873 N.E.2d 306, quoting *State v. Barnes,* 94 Ohio St.3d 21, 27 (2002). We will notice plain error "only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91(1978), paragraph three of the

syllabus. "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *State v. Hill,* 92 Ohio St.3d 191, 203 (2001).

## B. Analysis

{¶22} Under the first assignment of error, Jones contends that he was deprived of a constitutionally adequate jury selection process because the prospective jurors were not specifically informed that he was being tried for the offense of Failure to Comply with an Order or Signal of Police Officer. Jones asserts that without this basic but specific information, prospective jurors were unable to provide informed answers regarding their potential biases and prior knowledge of the underlying facts. Jones argues that this omission deprived the trial court of the ability to make knowledgeable rulings and Jones of the ability to make intelligent for-cause and peremptory challenges. For instance, Jones' counsel was unable to flesh out any preconceived notions the jurors may have had regarding people who lead high-speed chases, obstruct or evade law enforcement, or place children at risk.

{¶23} Voir dire examination is an essential process which allows litigants to determine whether a venireman is prejudiced or biased against either litigant. *See Vega v. Evans,* 128 Ohio St. 535 (1934), paragraph one

of the syllabus; *Krupp v. Poor,* 24 Ohio St.2d 123, 125 (1970); *Lloyd v. Willis,* 2004-Ohio-427, ¶ 11 (4th Dist.).  In *State v. Madison,* 2020-Ohio-3735, the Supreme Court of Ohio more recently explained that the purpose of voir dire is to discover whether any juror has a bias that would prevent him or her from individually weighing the facts of the case.  *Id.* at ¶ 24.  During voir dire, a trial court should allow reasonable inquiry on any relevant matter which is determinative of the issues of the case.  *See State v. Gaines,* 2009-Ohio-622, ¶ 71 (8th Dist.); *State v. Atalla*, 2004-Ohio-3414, ¶ 13 (9th Dist.); *Dayton v. Meyer,* 1991 WL 47533, *3 (2d Dist.).

{¶24} Our review of the record reveals that Jones is correct in his assertion that the prospective jurors were never informed of the name of the offense for which he was being tried.  During voir dire, the trial court made the following comments:

1.  "There may be something in this particular case that could disqualify you."

2.  The questions from the court and counsel are "not designed to pry into your personal affairs but to discover if you have any knowledge of the case" or to discover "if you have any prior experience that might cause you to identify yourself with either party.

3.  "Is there any reason that you feel that you couldn't be a fair and impartial juror for us in this case?"

Furthermore, the prospective jurors were not provided with a context for the offense, such as briefly advising them that the facts would involve Jones

allegedly driving at unsafe speeds or that there would be testimony that Jones failed to slow or stop when Officer Fletcher activated his cruiser lights and siren.

{¶25} Our research has yielded no Ohio cases directly on point. Jones has directed us to the Ohio Jury Instructions (OJI), which provides a guide for trial judges. "The standard instructions are crafted by the Ohio Judicial Conference and sanctioned by the Ohio Supreme Court to assist trial judges and lawyers in correctly and efficiently charging the jury on the law applicable to a particular case." *State v. Morgan,* 2024-Ohio-5843, ¶ 62. OJI CR 203.01 governs introductory remarks and directs that after introducing the attorneys the trial court should provide "a brief synopsis of the charges." *Id*. "The particular instruction to be given in a jury trial is fact specific and based upon the indictment, testimony, evidence, and defenses available to the defendant." *Id*.

{¶26} The State is quick to point out that "the standard instructions in Ohio Jury Instructions…are not mandatory. Rather they are recommended instructions based primarily upon case law and statutes." *Morgan, supra,* quoting *State v. Jeffers*, 2008-Ohio-1894, (11th Dist.). The State is correct. The trial court was not required to provide the additional information Jones now argues was lacking during voir dire.

{¶27} We cannot find that the trial court committed any error, let alone plain error. Based on the foregoing, Jones' first assignment of error is without merit. Accordingly, it is hereby overruled.

## ASSIGNMENT OF ERROR TWO - INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Legal Principles

{¶28} To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See State v. Allah,* 2015-Ohio-5060, ¶ 14 (4th Dist.); *State v. Short,* 2011-Ohio-3641, ¶ 113; *Strickland v. Washington,* 466 U.S. 668, 687. The defendant has the burden of proof because in Ohio, a properly licensed attorney is presumed competent. *State v. Gondor,* 2006-Ohio-6679, ¶ 62. Failure to satisfy either part of the test is fatal to the claim. *Strickland* at 697; *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989).

{¶29} In reviewing the claim of ineffective assistance of counsel we must indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland at 689.*

## B. Analysis

### 1. Voir Dire

{¶30} Jones cites his attorney's failure to request the trial court provide the prospective jurors with the name of the offense as deficient performance. Jones also argues his counsel should have, himself, provided the name or basic context of the offense in order to determine if there were any reasons the prospective jurors might not be able to show fairness and impartiality. As such, Jones concludes that his counsel's omission deprived him of a fair trial. Ordinarily, " '[c]ounsel's actions during voir dire are presumed to be matters of trial strategy.' " *Allah*, at ¶ 16, quoting *State v. Perez*, 2009-Ohio-6179, ¶ 206-208.

{¶31} As discussed above, however, the trial court was not required to provide the prospective jurors with the name of the offense charged or the basic context for the charge. Said request from defense counsel may have well been futile. Thus, counsel's performance cannot be found deficient because " 'the failure to perform a futile act does not support a claim of ineffective assistance of counsel.' " *State v. Walton*, 2024-Ohio-607, ¶ 21 (4th Dist.), quoting *State v. Stevens*, 2023-Ohio-3280, ¶ 120 (4th Dist.).

{¶32} Jones also claims that his counsel failed to ask additional questions to determine if the jurors knew anyone "involved with the trial." Jones asserts this omission was not the result of a strategic decision, but rather oversight. Arguably, defense counsel should have asked the prospective jurors if they knew Ashley Brown, James Friend, or the WPD officers who would be testifying. However, inquiring about persons "involved with the trial" is a rather broad argument on appeal.

{¶33} We note that the prosecutor asked if anyone knew Dakota Jones. Defense counsel further inquired as to whether anyone had spoken to Jones in the hallway.[1] Assuming that defense counsel somehow committed error by not expanding upon this line of inquiry, we nonetheless cannot find the outcome of Jones' trial would have changed. Once again, we cannot engage in speculation. Both of Jones' arguments are without merit.

2. Key Witness

{¶34} Jones next argues that his attorney had the duty to secure the presence of James Friend by subpoenaing him for his trial. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted

---

[1] This ultimately led to a sidebar conference with the trial court, the attorneys, and Juror 13 who was ultimately excused from service.

with the witnesses against him." *State v. McKenzie,* 2025-Ohio-415, ¶20

(4th Dist.).  The Confrontation Clause of the Sixth Amendment is made

applicable to the states by the Fourteenth Amendment.  *State v. Issa,* 93

Ohio St.3d 49, fn. 4 (2001).  "Consequently, this constitutional right applies

to both federal and state prosecutions, but the right of confrontation in

Article I, Section 10 of the Ohio Constitution provides no greater right of

confrontation than the Sixth Amendment."  *State v. Smith,* 2021-Ohio-2866,

¶ 67 (4th Dist.), citing *State v. Arnold*, 2010-Ohio-2742, ¶ 12.

{¶35} "The 'primary object' of this provision is to prevent

unchallenged testimony from being used to convict an accused—a safeguard

that applies to both federal and state prosecutions."  *State v. Carter*, 2024-

Ohio-1247, ¶ 27, citing *Mattox v. United States*, 156 U.S. 237, 242 (1895).

Additionally, "[t]he provision encompasses the rights to have a witness

physically appear in the courtroom, to require the witness to testify under

oath, and to force the witness to be subject to cross-examination."  *Id.*

{¶36} Absent a showing of prejudice, the mere failure to subpoena

witnesses does not render trial counsel's assistance ineffective.  *State v.*

*Kessinger,* 2014-Ohio-2496, ¶ 42 (4th Dist.); *State v. Dotson*, 2001-Ohio-

2507, *9 (4th Dist.); *State v. Coulter,* 75 Ohio App.3d 219, 230 (12th

Dist.1992).  To demonstrate prejudice, the defendant must establish that the

witness's testimony would have significantly assisted the defense, and that the testimony would have affected the outcome of the case. *See, e.g., Coulter, supra*; *State v. Reese,* 8 Ohio App.3d 202, 203 (1st. Dist.1982).

{¶37} During cross-examination, defense counsel attempted to elicit testimony from Officer Derrow that James Friend had initially confessed to driving the white Impala during the chase. The prosecutor objected. The jury was dismissed as the parties discussed the issue. The trial court ultimately ruled that any evidence of a confession could not come into evidence because Friend was not unavailable under Evid. R. 804(A)(5). During the discussion, defense counsel admitted that he did not subpoena Friend on his own but instead relied on the State's subpoena attempt to ensure Friend's availability.

{¶38} In support of his ineffectiveness claim, Jones points out that the jury asked three questions during deliberations, one of which included: "Can we know why the third adult victim was not part of the evidence?" Jones asserts that Friend's testimony, or lack thereof, could have directly impacted deliberations. For the reasons which follow, we disagree.

{¶39} We are mindful that while the decision not to call a witness may be debatable, it does not constitute ineffective assistance of counsel. *State v. Martin,* 2005-Ohio-1369, ¶ 19 (2d Dist.). However, defense counsel

admitted that he relied upon the State's subpoena for Friend. While counsel's decision may have been erroneous, Jones is still unable to provide any evidence as to what Friend's testimony may have been. Once again, we are asked to engage in speculation, which we may not do. Once again, Jones cannot demonstrate that the outcome of the trial might have been different had his defense counsel subpoenaed Friend.

{¶40} Additionally, we may take judicial notice of the pleadings in this matter which indicate that the State subpoenaed James Friend via the Vinton County Sheriff's Office, with an address at: 37274 S.R. 324, Hamden, Ohio on September 18, 2023.[2] During sidebar, the prosecutor indicated he "called back" the subpoena, but he may have been mistaken. By contrast, the pleadings docket indicates that the subpoena for James Friend was returned from Vinton County for failure of service on October 16, 2023 for the following reason: "Not living at this address."

{¶41} Both the State's and the defense's responses to discovery provide this Vinton County address as the only one for James Friend. Arguably any attempts to locate and subpoena Friend may have been futile.

---

[2] " 'A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' " *Gold v. Bertram,* 2023-Ohio-4567, ¶ 17 (4th Dist.), (citation omitted), quoting Evid.R. 201(B). " 'Both trial courts and appellate courts can take judicial notice of filings readily accessible from a court's website.' " *Gold, supra,* ¶ 18, quoting *Teays Valley Local School District Board of Education v. Struckman,* 2023-Ohio-244, ¶ 76 (4th Dist.) (Internal citations omitted.)

For the above reasons, we find no merit to Jones' claim regarding the failure to subpoena James Friend.

3. Exhibit

{¶42} Jones also argues that his counsel should have moved to admit Officer Fletcher's body camera video as an exhibit, concluding that this omission constitutes ineffective assistance. Defense counsel played the body camera video of Fletcher approaching the vehicle but did not move to admit it into evidence. During deliberations, the first question the jury submitted was "Can we please see the video again?" The trial court declined, noting that the video was not introduced as an exhibit. For the following reasons, we find that counsel's omission in proffering the body camera as an exhibit is not error.

{¶43} During cross-examination, Officer Fletcher testified that his body camera was not on at the beginning of the chase. Officer Fletcher testified repeatedly that he was unable to visualize the driver during the chase. Specifically, Fletcher testified as follows:

Q:    Now, did your body camera at any point happen to
      get a clean look at the driver during the chase?

A:    No, sir.

Q:    Inside the car at all?

A:    No.

{¶44} Then, while defense counsel played the body camera, Officer Fletcher narrated. Fletcher explained to the jury that it showed him approaching the passenger side. The transcript indicates that the body camera showed a "set of hands sticking out of the passenger side window." Officer Fletcher confirmed that Jones could be seen hanging out of the passenger side of the vehicle.

{¶45} In light of Officer Fletcher's testimony, we suspect that the body camera evidence, even if it had been admitted as an exhibit, would not have greatly aided the jury in its deliberations. Defense counsel successfully emphasized some testimony that suggested Jones' body was not completely in the driver's seat. The body camera evidence, along with Fletcher's testimony, would likely have been cumulative. Moreover, even if the body camera evidence had been admitted as an exhibit and the jury had replayed it, based on the substantial evidence of Jones' guilt, we cannot say the outcome of the trial would have been different. We find Jones' argument regarding the exhibit is also without merit.

4. Cross-examination

{¶46} During Ashley Brown's cross-examination, Jones' trial counsel attempted to demonstrate that Brown may have had a motive to lie about who drove the white Impala in order to avoid potential problems with CPS.

Defense counsel inquired: "And if you were convicted of a felony then that involved a car crash with your child in the back seat, that would mean CPS may take away your children?" The prosecutor objected and the trial court excluded the question as calling for a legal conclusion. Jones asserts that his trial counsel did not, but should have, corrected the "flawed questioning."

{¶47} We are unpersuaded that defense counsel performed deficiently by not continuing to pursue this line of questioning with Ashley Brown. Our review demonstrates that counsel successfully elicited testimony that Brown was under the influence of illicit substances on the night of the accident; that she had obviously allowed her child to be in the car during the high-speed chase; and that CPS contacted her after the chase and crash. Defense counsel's cross-examination was able to cast aspersions on Brown's credibility. We cannot find counsel's performance on cross-examination to be deficient.

5. Cumulative Error

{¶48} Jones cites the above alleged errors as constituting cumulative error warranting reversal of his conviction and a new trial. Under the cumulative-error doctrine, " 'a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of

trial court error does not individually constitute cause for reversal.' " *State v. Fannon***,** 2018-Ohio-5242, ¶124 (4th Dist.), quoting *State v. Garner*, 74 Ohio St.3d 49, 64(1995), citing *State v. DeMarco,* 31 Ohio St.3d 191(1987), paragraph two of the syllabus.  "Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Smith,* 2016-Ohio-5062, ¶ 106 (4th Dist.), citing *State v. Harrington,* 2006-Ohio-4388, ¶ 57 (4th Dist.).

{¶49} The cumulative error doctrine does not apply where the defendant "cannot point to 'multiple instances of harmless error.' " *Fannon, supra,* ¶ 124, quoting *State v. Mammone*, 2014-Ohio-1942, ¶ 148.  We have found no errors and we cannot indulge in speculation simply because we are "peering through the cumulative error lens." *See State v. Baber,* 2021-Ohio-1506, ¶ 39 (1st Dist.).  For the foregoing reasons, Jones' second assignment of error alleging ineffective assistance of counsel is without merit and is hereby overruled.

## ASSIGNMENT OF ERROR THREE - MAXIMUM SENTENCE

### A.  Legal Principles

{¶50} Jones challenges his maximum sentence of 36 months for Failure to Comply with Order of Police Officer, R.C. 2921.331.  We review felony sentences under the standard set forth in R.C. 2953.08(G)(2):

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a)  That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b)  That the sentence is otherwise contrary to law.

See State v. Hughes, 2021-Ohio-3127, at ¶ 37 (4th Dist.).

{¶51} Jones contends that the trial court did not consider the required factors for sentencing under R.C. 2921.331(C)(5)(b) and, consequently, his sentence is disproportionate to other sentences for the same offense.  Under R.C. 2921.331(B), "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."  A violation of R.C. 2921.331(B) rises to the level of a third-degree felony if a jury or judge finds proof beyond a reasonable doubt that either:

(i)     The operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property.

(ii)     The operation of the motor vehicle by the offender
caused a substantial risk of serious physical harm to
persons or property.

R.C. 2921.331(C)(5)(a)(i)-(ii).

{¶52} R.C. 2921.331(C)(5)(b) sets forth additional factors a trial court must consider when sentencing an offender for failure to comply if R.C. 2921.331(C)(5)(a) applies. Under this provision, trial courts must not only consider the factors set forth in sections 2929.11 and 2929.12 of the Revised Code when determining the seriousness of an offender's conduct in committing failure to comply, they must also consider additional factors set forth in R.C. 2921.331(C)(5)(b) to determine the seriousness of the offender's conduct. Pursuant to R.C. 2921.331(C)(5)(b), the trial court was required to consider the following factors when determining what sentence to impose for Jones' offense:

(i) The duration of the pursuit;
(ii) The distance of the pursuit;
(iii) The rate of speed at which the offender operated the motor vehicle during the pursuit;
(iv) Whether the offender failed to stop for traffic lights or stop signs during the pursuit;
(v) The number of traffic lights or stop signs for which the offender failed to stop during the pursuit;
(vi) Whether the offender operated the motor vehicle during the pursuit without lighted lights during a time when lighted lights are required;
(vii) Whether the offender committed a moving violation during the pursuit;

(viii) The number of moving violations the offender committed during the pursuit;

(ix) Any other relevant factors indicating that the offender's conduct is more serious than conduct normally constituting the offense.

R.C. 2921.331(C)(5)(b)(i)-(ix).

## B. Analysis

{¶53} Jones asserts that there is no indication that the trial court actually considered the R.C. 2921.331(C)(5)(b) sentencing factors because they were never discussed at the sentencing hearing. Jones is correct that the factors were not discussed. At the hearing, the prosecutor requested a maximum sentence, noting Jones' extensive criminal history and lack of taking responsibility for his actions. The underlying facts of the offense were not revisited.

{¶54} Jones points to the language of the Uniform Sentencing Entry which states only that the trial court considered the "principles and purposes of sentencing in R.C. 2911, the seriousness and recidivism factors in R.C. 2929.12, and all other relevant sentencing statutes…" Jones concedes that the trial court's reasons for its findings need not be specified in the sentencing entry "as long as they are discernable from the record as a whole." *State v. Sheets,* 2022-Ohio-6243, ¶ 24. However, Jones directs our

attention to several cases from other districts to demonstrate that Jones'

sentence is disproportionately high for the conduct alleged.

{¶55} We have reviewed these cases. We are not persuaded that the

trial court failed to consider the required sentencing factors for Failure to

Obey Signal or Order of Police Officer. Nor are we persuaded that Jones'

sentence is disproportionate. Our first observation is that in a majority of the

other cases, the defendants acknowledged their criminal conduct and pled

guilty to the offense. That alone differentiates Jones' sentence.

{¶56} In *State v. Webster,* 2023-Ohio-2637, the 9th District noted,

beginning at ¶ 21:

> Regarding the sentencing factors a court is required to
> consider under Section 2929.11 and 2929.12, this Court
> presumes that a trial court has properly considered the
> statutes even if it does not put its consideration of them on
> the record. *State v. Fernandez*, 2014-Ohio-3651, ¶ 8 (9th
> Dist.). We have held that, "[u]nless the record shows that
> the court failed to consider the factors, or that the sentence
> is 'strikingly inconsistent' with the factors, the court is
> presumed to have considered the statutory factors if the
> sentence is within the statutory range." *Id.,* quoting *State
> v. Boysel,* 2014-Ohio-1272, ¶ 13 (2d Dist.). We conclude
> that the same presumption should apply to the sentencing
> factors under Section 2921.331(C)(5)(b). *State v.
> Yarbrough*, 2015-Ohio-1672, ¶ 17 (2d Dist.).

Other courts have reached the same analysis as the 2d and 9th Districts. *See*

*State v. Wingate,* 2020-Ohio-6796, ¶ 23 (3d Dist.); *State v. Fiske*, 2024-

Ohio-5467, ¶ 24 (5th Dist.); *State v. Rochester,* 2024-Ohio-5306, ¶ 45 (6th Dist.); *State v. Reed*, 2008-Ohio-6082, (10th Dist.); and *State v. Peoples*, 2025-Ohio-1015, ¶ 15 (11th Dist.).

{¶57} Based on our review, we find no merit to Jones' argument that the trial court failed to consider the required sentencing factors and as such, his sentence is disproportionate. At Jones' sentencing, the prosecutor reminded the court that Jones had not accepted responsibility for his actions. Prior to imposition of his sentence, the trial court stated: "The Court would note the presentence investigation report…Mr. Jones is continuing to deny that he was driving the vehicle."

{¶58} In the report, Jones was asked to provide an "Offender's Version" of the offense. Interestingly, despite being self-described as "high myself on meth" at the time of the police pursuit, Jones' description of the twists and turns taken throughout Wellston and onto State Route 327 closely mirrors Officer Fletcher's testimony of the same. While the trial court did not explicitly make reference to the R.C. 2921.331(C)(5)(b) factors, the trial judge sat through the jury trial and the testimony of the officers who described the distance and duration of their pursuit of Jones; the driving infractions they observed; and the weather conditions at the time. Jones' sentence is within the statutory range. In the absence of any indication in

this record that the court failed to consider the factors, we have no reason to presume that the trial court did anything other than know the law and properly apply the required R.C. 2921.331(C)(5)(b) factors. *See State v. Kimble,* 2025-Ohio-310, ¶ 36 (6th Dist.); *State v. Stevers,* 2023-Ohio-3050, ¶ 21 (4th Dist.), citing *State v. Combs,* 18 Ohio St.3d 123, 125 (1985). Accordingly, Jones' third assignment of error is without merit and is hereby overruled.

{¶59} Having found no merit to any of Jones' assignments of error, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**