[Cite as *Lyons v. Lyons*, 2009-Ohio-6868.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
CRAWFORD COUNTY

HOLLY B. LYONS,

    PLAINTIFF-APPELLEE,           CASE NO.  3-09-12

    v.

JOHN G. LYONS,                     O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Crawford County Common Pleas Court
Domestic Relations Division
Trial Court No. 85-DR-0509

Judgment Affirmed

Date of Decision:   December 28, 2009

APPEARANCES:

    *John G. Lyons,* Appellant

    *Clifford J. Murphy* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, John G. Lyons (hereinafter "Lyons"), appeals the June 23, 2009 judgment of the Common Pleas Court of Crawford County, Ohio, finding that Lyons owed an arrearage on child support and spousal support, that the Crawford County Child Support Enforcement Agency is the exclusive agency authorized by law to collect this support, and that the collection and enforcement of the support order was not time barred.

{¶2} Our review of this case begins by noting that the procedural history of the case dates back to August 1, 1984, when Lyons' then-wife, Holly Lyons, nka, Holly Workman (hereinafter "Holly"), filed for divorce, Case No. 39883-84-414. On August 10, 1984, the trial court awarded temporary custody of the two Lyons children to their mother, and ordered Lyons to pay child support in the amount of $60.00 per week ($30.00 per week for each child).

{¶3} On October 9, 1985, the trial court denied the request for a divorce on the grounds stated in the complaint, but granted leave to Holly to file an amended complaint at such time as the parties had lived separate and apart without cohabitation for a year. However, the trial court also awarded custody of the children to their mother, ordered the same amount of child support to be paid by wage assignment to commence on April 19, 1985, ordered Lyons to pay a lump

sum of $1,205.00 in alimony[1] to be paid by wage assignment, and divided the parties' personal property. Further, the court found Lyons in contempt for failing to pay child support under the temporary order.

{¶4} Lyons appealed to this Court, and we found that the trial court erred in awarding alimony, dividing the parties' personal property, conditionally sentencing Mr. Lyons to ten days in jail upon his future compliance with court orders, and awarding custody of the children to their mother without first finding that it was in their best interests. See *Lyons v. Lyons* (Mar. 19, 1987), 3rd Dist. No. 3-85-22, 1987 WL 8156. However, we affirmed the trial court's determination as to the amount of child support to be paid by wage assignment as of April 19, 1985, that Lyons was in arrears on his child support under the temporary order of August 10, 1984, and that Lyons was in contempt for failing to pay child support under the temporary order. *Id.*[2]

{¶5} Meanwhile, on September 18, 1985, Holly filed a new complaint for divorce, Case No. 40671-85-509, in the trial court. Lyons filed an answer and counter-claim, wherein he also requested that he be granted a divorce. On

---

[1] This term has since been changed to the term "spousal support."

[2] Also, on June 20, 1985, Holly filed a new motion for contempt against Lyons for failing to pay child support since April 19, 1985. The trial court found Lyons in contempt and determined the arrears to be $360.00. He was sentenced to ten days in jail, seven of which would be suspended if Lyons purged himself of the contempt by paying the arrearage within ten days of the journalization of the entry. Lyons appealed to this court, and we affirmed the finding of civil contempt (the seven day sentence that was suspended if Lyons purged himself) and the amount of arrearages, but we reversed the court's decision as to the remaining three days on his jail sentence for failing to find he was in contempt beyond a reasonable doubt (a necessary finding for a *criminal* contempt). See *Lyons v. Lyons* (Mar. 16, 1987), 3rd Dist. No. 3-85-23, 1987 WL 8153.

November 12, 1985, the trial court issued temporary orders in the case. Among these orders was that Lyons pay temporary alimony of $75.00 per week to Holly through the Bureau of Support. The trial court further acknowledged the existing child support order in the 1984 case and that this support was placed on wage assignment. This action was stayed pending the result of the appeal in the 1984 case. However, the trial court specifically ordered that all orders regarding custody, support, and alimony were to remain in full force and effect during the pendency of the appeals proceeding. Despite the stay of the proceedings, a contempt motion was filed by Holly against Lyons on May 7, 1986, which contained several allegations, including a failure to pay alimony. On June 13, 1986, the trial court found, inter alia, that Lyons was in contempt for failing to pay the previously ordered alimony. Thus, the court ordered that alimony was also to be paid by way of wage assignment through the Bureau of Support.

{¶6} On December 18, 1986, Holly filed a motion with the trial court, requesting that the previously stayed matter be allowed to proceed on the issue of the divorce only. The trial court granted this motion, and on March 16, 1987, it granted Holly's request for a divorce and specifically retained jurisdiction to determine the other matters in the divorce action pending resolution of Case No. 3-85-22 by this Court.

{¶7} This matter came before the court for final hearing on September 1 and 4, 1987. On November 30, 1987, the trial court rendered its judgment on the pending matters. In this entry, the court ordered that Case No. 39883-84-414 and Case No. 40671-85-509 be consolidated into Case No. 40671-85-509. The court further found that Lyons was in arrears in his child support obligation in Case No. 39883-84-414 in the amount of $2,465.00 as of September 4, 1987, and awarded this amount in a judgment in Holly's favor. The court also found Lyons in arrears in his alimony obligation in the amount of $7,430.00 as of September 4, 1987, and awarded this amount in a judgment in Holly's favor. The court also awarded both parties a divorce, ordered that they and their children submit to a psychiatric evaluation, and awarded custody of the two children to Holly with Lyons having rights of visitation. The court also ordered Lyons to pay child support of $57.87 per child per week through the Bureau of Support and by way of wage assignment.

{¶8} Lyons filed an appeal of the trial court's November 30, 1987 entry, asserting as error, inter alia, the granting of a divorce, the consolidation of the two divorce cases, the award of alimony, and the amount of child support he was obligated to pay. On August 29, 1989, we affirmed the judgment of the trial court. See *Lyons v. Lyons* (Aug. 29, 1989), 3rd Dist. No. 3-87-37, 1989 WL 100127.

{¶9} On April 17, 1990, the trial court issued an order to Lyons, requiring him to seek work. This order also stated that Lyons was to report at least ten

places where he applied for employment each month in writing to the Child Support Enforcement Agency. He was also ordered to notify the court if he obtained employment, received income from any source, or obtained ownership of any asset with a value of $500.00 or more. In August of 1990, Holly filed another motion for contempt against Lyons for non-payment of child support and alimony. On September 18, 1990, the trial court found Lyons in contempt for failure to pay child support and alimony but withheld disposition. The court further ordered Swan Hose, Lyons' former employer, to deliver any monies held by it to the Crawford County Child Support Enforcement Agency ("CSEA") to be applied to the support arrearage of Lyons.

{¶10} On September 20, 1991, Holly's new husband, Rick Deems, filed a petition for the adoption of the two Lyons children in the Court of Common Pleas of Crawford County, Ohio, Probate Division. In this petition, Deems alleged that the petition for adoption should proceed without the consent of their father, Lyons, because Lyons failed to support the children for a period of one year as required by R.C. 3107.07(A). Lyons objected to the adoption, and the matter proceeded to a hearing. Thereafter, the probate court granted Deems' petition for adoption. Lyons also appealed that judgment to this Court. See *In re Adoption of Deems* (3rd Dist. 1993), 91 Ohio App.3d 552, 632 N.E.2d 1347.

{¶11} In that appeal, this Court found that the evidence at the adoption hearing revealed that Lyons voluntarily left his employment with Swan Hose to help his parents "full time" in their farming operation. *Id*. at 556. Although Lyons claimed that he worked more than forty hours per week on the farm, he received no monetary compensation, only "room and board," and his parents provided him with a vehicle, insurance, and gasoline. *Id*. The record also demonstrated that Lyons willfully failed to seek gainful employment as required by the seek work order in the divorce action. *Id*. Thus, we held that the probate court did not err in determining that Lyons failed without justifiable cause to provide for the maintenance and support of the minor children as required by judicial decree for a period of one year immediately preceding the filing of the petition," and we affirmed the decision of the probate court. *Id*.

{¶12} Immediately preceding and while the adoption proceedings were occurring, Lyons' parents filed a motion to intervene and for visitation with their grandchildren in the divorce case. Lyons also filed a number of "notices" and motions in the divorce case regarding, inter alia, support, restitution, and visitation, and he informed the court that he underwent a psychological evaluation. He also filed a motion for shared parenting on December 19, 1991. Holly filed a motion to stay the proceedings pending the resolution of the adoption proceedings and subsequent appeal. The trial court granted the request to stay. Upon

discovering that the adoption of the children was affirmed by this Court on November 12, 1993, the trial court in the divorce action found that "all pending matters in the within action have been rendered moot because the minor children of the parties have been adopted" on November 19, 1993. Accordingly, the trial court dismissed them.

{¶13} In 1995, Lyons was injured in a farming accident and lost a leg. He began receiving social security disability benefits in 1998. On November 27, 2002, the trial court issued a judgment entry ordering the Social Security Administration to deduct from any lump sum benefit payable to Lyons any part up to the amount of $36,132.74, which was the arrearage owed by Lyons and to forward the deducted funds to the Ohio CSPC in Columbus, Ohio. Lyons objected to the withholding.

{¶14} On May 23, 2003, CSEA filed a motion for contempt against Lyons. On July 3, 2003, a hearing was held on these matters before a magistrate. At this hearing, CSEA requested that the withheld amount, which was being held in escrow, be immediately released to CSEA. Lyons maintained, albeit loosely, that the doctrine of laches applied due to the length between the order of support, his last payment, and CSEA's attempt to collect the arrearage from his social security payments. Lyons also asserted that the order required him to pay through the

Bureau of Support, which was dissolved, not to CSEA.[3] On August 26, 2003, the magistrate found Lyons in contempt for failing to pay child support and sentenced him to thirty days in jail. The court further ordered that the monies held in escrow be released to CSEA.

{¶15} Lyons also appealed this decision to this Court. On April 5, 2004, we found that the trial court erred in finding Lyons in contempt and sentencing him to thirty days in jail because there was no evidence regarding the amount of social security withholdings that were held in escrow in order for the court to determine whether that amount would actually satisfy the arrearages, thereby purging Lyons of contempt. *Lyons v. Lyons*, 3rd Dist. No.3-03-36, 2004-Ohio-1721, at ¶ 4. Thus, we reversed this portion of the judgment and remanded the matter for further proceedings. *Id.* at ¶¶ 4, 6. However, we affirmed the trial court's decision to release the funds held in escrow to CSEA. *Id.* at ¶ 5. Specifically, we found that Lyons was aware that CSEA was claiming that he owed back support, that the funds were being held in escrow, and that the evidence was clear that Lyons had an arrearage. *Id.* Therefore, we held that the trial court's

---

[3] At the time of Lyons' divorce from Holly, the court was responsible for the collection of child support and alimony through the Bureau of Support. However, subsequent to the divorce, the General Assembly enacted legislation, creating the office of child support in the department of job and family services and requiring each county to have a child support enforcement agency. Each county CSEA is responsible for the enforcement of support orders and shall perform all administrative duties related to the enforcement of any support order, including child and spousal support. Further, these agencies are the successors in interest to their respective counties' former bureaus of support and vested with all duties related to the enforcement of child and spousal support that their predecessors once had. See R.C. 3125.01, et seq.

decision to release the funds from escrow was well within its discretion and a separate hearing before releasing the funds was not required. *Id.*

{¶16} Once the proceedings were remanded, CSEA filed a motion to dismiss its prior motion for contempt against Lyons. On May 19, 2004, the trial court granted this motion and, accordingly, dismissed the motion for contempt and vacated the date set for hearing on the matter.

{¶17} Over four years later, on September 11, 2008, Lyons filed a motion with the trial court entitled, "Motion To Show Cause of Contempt, Malicious Prosecution, Fraud, And Criminal Liability By Steven Walker And Other Administrative Agents, And Defendant Motion For Relief." A hearing date was set for May 4, 2009. Lyons filed a number of subpoenas, including one for the county prosecutor, the Common Pleas Court judge, and the magistrate who found him in contempt in 2003. Motions to quash were filed on the behalf of all three of these witnesses.

{¶18} Lyons' motion was heard on May 4, 2009. At that time, the trial court asked Lyons to clarify his motion in order for the court to understand the purpose of the motion. It then became clear that he was asking the court to find those he thought were responsible for the withholdings from his social security payments, i.e agents of CSEA and the agency attorney, in contempt for what he perceived were violations of the law. In essence, Lyons maintained that his case

was dismissed on November 19, 1993, when the trial court found all pending motions moot because of the adoption of the Lyons children, and that CSEA ceased to have any authority to collect arrearages after that time. Further, he asserted that he was never ordered to pay CSEA, only the Bureau of Support, and that once the Bureau of Support ceased to exist, he was no longer obligated to pay.

{¶19} After permitting Lyons to elicit testimony on this matter and to explain to the court his basis for the motion, the trial court informed Lyons that it could not find CSEA and/or any of its agents in contempt because they were actually following the November 30, 1987 order of the court for support and because it could not find a person in *contempt* for a violation of the *law*, if any such violation even existed. However, sua sponte, the trial court ordered the assistant prosecutor, who was representing the agency at the hearing, to investigate whether Holly was still interested in receiving the arrearages and whether the agency wanted to continue to pursue the matter given the age of the case.

{¶20} On May 27, 2009, CSEA filed a notice to the court that Holly wanted the agency to collect the arrearage owed to her and wanted to be present at future hearings in this matter. CSEA also attached a certified copy of the arrearage calculation worksheet for Lyons as to both child support and spousal support to the notice. This notice was also sent to Lyons. On June 11, 2009, Lyons filed the following: "Defendant Notice of Continuing His Testimony and

Defendant Recommendation." This document contained sixty-four paragraphs, purporting to be Lyons' testimony in support of his position, and fourteen paragraphs with his recommendations on how to resolve this matter. Also attached to this notice were numerous documents.

{¶21} The hearing in this matter reconvened on June 15, 2009. At that time, the trial court informed Lyons that it had read his notice of June 11, 2009, and permitted him to further be heard. Once Lyons rested, CSEA presented the testimony of Pat Siebert, an employee of CSEA in their accounting department. Siebert performed an audit in Lyons' support case and completed an arrearage calculation. This document showed that Lyons ceased making any support payments in 1989. For the years 1990-2002, no payments were made. However, in 2003, $2,888.50 was collected. Thereafter, $1,200.00 was paid each year, and as of May 1, 2009, $500.00 was collected for the year 2009. According to the child support arrearage calculation, $42,673.20 was owed, $21,435.47 was paid as of May 1, 2009, and a prior arrearage amount of $2,465.00 was owed prior to the November 30, 1987 entry establishing his final support obligation, leaving a total arrearage of $23,702.73. In addition, this arrearage calculation also contained a separate sheet for spousal support, which reflected that Lyons owed $7,430.00 in spousal support.

{¶22} Holly also testified for CSEA. She testified that the numbers reflected in the arrearage calculation worksheet appeared to accurately reflect what was owed to her by Lyons. She also testified that the payments appeared to be accurate. After her testimony, CSEA rested, and the parties were permitted to give closing arguments. The court then took the matter under advisement.

{¶23} On June 23, 2009, the trial court found that Lyons owed $23,702.73 in child support arrearage, $7,430.00 in spousal support arrearage, that CSEA was the agency with exclusive authority to collect support, having succeeded by operation of law to the duties and responsibilities of the Bureau of Support, that the court could not and did not modify or vacate any order of support, and that the collection and enforcement of the support claims was not time barred. The court then ordered as follows: "insofar as judgment has not previously been granted, the amounts of child support and spousal support are reduced to a lump sum and judgment is awarded in the amounts hereinabove stated as of May 1, 2009."

{¶24} This appeal followed, and Lyons now asserts three assignments of error.

## ASSIGNMENT OF ERROR I

**THE TRIAL JUDGE ERRED IN FINDINGS OF THE PARTIES HAD BEEN DIVORCED BY A JUDGMENT, OF PLAINTIFF HAD BEEN GRANTED CUTODY [*sic*] OF PARTIES MINOR CHILDREN, OF CHILD SUPPORT HAD BEEN ESTABLISHED OR FIXED AT $57.87 PER WEEK PER**

-13-

**CHILD WITH NO MODIFICATION, OF EXISTANCE [*sic*] OF ARREARS OF SUPPORT THAT DEFENDANT OWES, AND OF A FINDING THAT THE PRIOR JUDGE COULD NOT INVALIDATE THE JOURNAL ENTRY OF JUDGMENT, AS ALL SUCH FINDINGS IS [*sic*] A DETERMINATION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE;**

**ASSIGNMENT OF ERROR II**

**THE TRIAL JUDGE ERRED IN NOT ALLOWING WITNESSES TO BE CALLED FOR DEFENDANT, AS THE TESTIMONY OF THOSE WITESSES [*sic*] COULD HAVE BEEN PERTINENT OR RELEVANT EVIDENCE ON BEHAVE [*sic*] OF DEFENDANT, DEPENDING ON THOSE WITNESSES STATEMENTS;**

**ASSIGNMENT OF ERROR III**

**THE TRIAL JUDGE ERRED IN GRANTING AWARDS AND ORDERING THE CONTINUED COLLECTION OF AMOUNTS IN THE SAME MANNER.**

{¶25} Initially, we note that Mr. Lyons' first and third assignments of error are related, and as such, we elect to address them together.

*First and Third Assignments of Error*

{¶26} In his first assignment of error, Lyons maintains that the trial court's judgment was against the manifest weight of the evidence. In support of this position, he asserts that the divorce action was not finalized because custody of the children was left open. Additionally, he contends that the November 19, 1993 judgment entry of the trial court dismissed the case. Thus, he maintains that he

-14-

never owed support. Similarly, Lyons asserts in his third assignment of error that all entries, including the June 23, 2009 judgment entry, by the trial court after the November 19, 1993 dismissal are invalid. Further, he contends that the CSEA is not a party to the case and has no authority to enforce support. In response, CSEA maintains that all of these issues are barred by the doctrine of res judicata.

{¶27} "The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as * * * estoppel by judgment, and issue preclusion, also known as collateral estoppel." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226, 1995-Ohio-331. This Court has recently addressed this issue and held that "[c]laim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action. *Dawson v. Dawson*, 3rd Dist. Nos. 14-09-08, 10, 11, 12, 2009-Ohio-6029, at ¶ 36, citing *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140, 1998-Ohio-435. Further, "[w]here a claim could have been litigated in the previous suit, claim preclusion also bars subsequent actions on that matter." *Dawson*, supra, citing *Grava*, 73 Ohio St.3d at 382. In essence, estoppel by judgment bars the relitigation of the same cause of action between the same parties. *Karam v. Allstate Ins. Co.* (1985), 27 Ohio App.3d 137, 140, 500 N.E.2d 358.

{¶28} Here, the parties divorce on November 30, 1987, was a final, appealable order. Lyons appealed that judgment to this Court, challenging, inter alia, the granting of a divorce, the award of spousal support (alimony), and the award of child support. These issues were all affirmed and are now the law of the case. In addition, the court awarded custody of the minor children to Holly but also issued an order that the parents and children submit to psychological examinations. This did not leave the matter of custody in dispute. It simply left the parties and the court with options concerning any modifications to custody and/or visitation. In any event, this issue was never appealed. Thus, Lyons is precluded from challenging the award of support and the collection of arrearages thereon now.

{¶29} As for the November 19, 1993 judgment that Lyons relies on to claim that the case was dismissed, including any past due amounts for support, he is also precluded from raising this issue. First, when CSEA began collecting the arrearages through a social security withholding and filed a contempt motion against Lyons, the trial court found he was in arrears, held him in contempt, and ordered that the funds held in escrow be released to CSEA. As previously noted, Lyons challenged this decision. Although we held that the contempt finding was improper because the evidence did not establish whether the amount held in escrow would purge Lyons of contempt, we specifically found that the evidence

was clear that he was in arrears and the trial court did not abuse its discretion in releasing the funds to CSEA. *Lyons*, 2004-Ohio-1721, at ¶¶ 4-5. Lyons did not raise any issues concerning the November 19, 1993 decision. Thus, he may not raise them now.

{¶30} Second, this judgment did not affect the case in the manner that Lyons appears to believe it does. As previously noted, in November of 1993, the trial court dismissed the pending motions of Lyons and his parents concerning grandparent visitation, support, restitution, visitation, and shared parenting, which were each rendered moot by the adoption of the children by Rick Deems. This dismissal also terminated Lyons' obligation to provide support for the children pursuant to the 1987 court order *in the future* and terminated the order permitting Lyons to exercise visitation with the children. This judgment did *not* terminate Lyons' obligation to support his children prior to their adoption, did *not* terminate the award of spousal support, and did *not* terminate the amount of child support previously owed in the 1984 divorce action.

{¶31} As for CSEA being the entity that enforces and collects the support, its involvement was never an issue that was appealed. Therefore, Lyons cannot make such an assertion now. Moreover, as previously noted, after the Lyons' divorce, the General Assembly created the office of child support in the department of job and family services and required each county to have a child

support enforcement agency. See R.C. 3125.01, et seq. Each county CSEA is responsible for the enforcement of support orders and shall perform all administrative duties related to the enforcement of any support order, including child and spousal support. Id. Further, these agencies are the successors in interest to their respective counties' former bureaus of support and vested with all duties related to the enforcement of child and spousal support that their predecessors once had. Id. Therefore, CSEA is not only entitled to collect the support arrearages, it is *required* by law to do so.

{¶32} For all of these reasons, the first and third assignments of error are overruled.

*Second Assignment of Error*

{¶33} In his second assignment of error, Lyons maintains that the trial court erred by quashing a number of subpoenas issued by him. He asserts that by not allowing these people to testify it resulted "in defendant not having relevant and significant evidence by testimony from those witnesses, even if they might be officers of the court."

{¶34} Although Lyons does not specify the names of those witnesses whose subpoenas were quashed, the transcript of the May 4, 2009 hearing reflects that the court quashed the subpoenas issued by Lyons for Judge Russell Wiseman, Magistrate Mary Eileen Holm, and Prosecutor Stanley Flegm. In his argument to

the trial court as to why they were necessary witnesses, Lyons essentially stated that he needed Judge Wiseman and Magistrate Holm to explain why they rendered the decisions that they did in 2003. He also stated that he needed Prosecutor Flegm as an expert witness about the law pertaining to the issues he raised in his motion. The trial court found that the judge and magistrate did not have to explain their reasons for their decisions, stating that any challenge to these decisions could be made by appealing the judgments. The court also found that the prosecutor's function was not to act as an expert witness for a private party.

{¶35} Evidence Rule 103(A)(2), in pertinent part, states: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court." The purpose of this rule is to enable a reviewing court to determine whether the determination by the trial court is prejudicial. *State v. Hipkins* (1982), 69 Ohio St.2d 80, 82, 430 N.E.2d 943. "'[I]n the absence of a proffer, the exclusion of evidence may not be assigned as error.'" *Id.*, quoting *Pokorny v. Local 310* (1973), 35 Ohio App.2d 178, 184, 300 N.E.2d 464, reversed on other grounds, 38 Ohio St.2d 177, 311 N.E.2d 866; but see, *State v. Gilmore* (1986), 28 Ohio St.3d 190, 194, 503 N.E.2d 147 (modifying *Hipkins* by holding that "a party is not required to proffer excluded evidence in order to preserve any alleged error for

-19-

review if the substance of the excluded evidence is apparent to the court from the context within which questions were asked").

{¶36} Here, Lyons did not proffer the substance of the evidence. Rather, in his argument to the trial court he merely stated that he needed the judicial officers to explain their decisions. He provided no information as to what those explanations would be. Likewise, he stated that the prosecutor was needed to provide his opinion on the law, yet he provided no information as to what that opinion would be. Further, his statements to the trial court and the actual wording of this assignment of error demonstrate that Lyons had no idea what reasons the judicial officers would give or the opinion the prosecutor would render. Since no proffer was made in this case and the evidence is not apparent, Lyons' argument must necessarily be rejected. Moreover, Evid.R. 402 states that "[e]vidence which is not relevant is not admissible." The reasoning of the judicial officers in 2003 and the prosecutor's opinion of whether a violation of law occurred were not relevant to determining whether CSEA's agents were in contempt for failing to obey a court order, as the court's orders speak for themselves. Thus, the second assignment of error is overruled.

{¶37} For all of the foregoing reasons, the judgment of the Common Pleas Court of Crawford County, Ohio, is affirmed.

*Judgment Affirmed*

**PRESTON, P.J., and WILLAMOWSKI, J., concur.**

**/jlr**