[Cite as *Baldwin v. Baldwin*, 2026-Ohio-1852.]

Released 5/11/26

THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

| | | |
|---|---|---|
| BRIDGET BALDWIN, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 25CA705 |
| | : | |
| v. | : | |
| | : | DECISION AND JUDGMENT |
| JEREMIAH BALDWIN, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Jeremiah Baldwin, Columbus, Ohio, appellant pro se.

William L. Archer, Jr., Vinton County Prosecuting Attorney and Amanda K. Miller, Assistant Vinton County Prosecuting Attorney, McArthur, Ohio, for appellee South Central Ohio Job and Family Services and Bridget Baldwin.

_____

Smith, P.J.

{¶1} Jeremiah Baldwin, "appellant," appeals the Entry of Dismissal entered April 24, 2025 in the Vinton County Court of Common Pleas. The trial court's entry dismissed various pending motions relating to appellant's obligations for child support arrearages. Appellant has raised seven assignments of error challenging the dismissal. However, based upon our review, all are without merit. Accordingly, all assignments of error are overruled. The judgment of the trial court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} Appellant and Bridget Baldwin, "Bridget," were married in 1998.  Bridget filed a complaint for divorce, through counsel, against appellant on May 11, 2001.  Appellant was unrepresented until September 14, 2001 when Attorney Trecia Kimes-Brown filed a notice of appearance.  Two minor children were born during the marriage, N.B. in 1999, and A.B. in 2000.

{¶3} The parties' Agreed Judgment Entry Decree of Divorce was entered on May 16, 2002.  Bridget was ordered to be the residential parent and legal custodian of the minor children.  Appellant had rights of visitation.  Appellant was also ordered to pay child support in the amount of $683.51 per month.  In the years since, the parties have returned to court on various motions, including contempt.  On June 27, 2019, the trial court entered a Termination Order of judicial child support.

{¶4} On or after October 7, 2024, appellant filed the following pleadings:  Petition for Case Review; Motion for Administrative Review; Motion for Discovery; and Motion for Injunctive Relief.  On November 26, 2024, the trial court scheduled a hearing for January 21, 2025.  The trial

court also filed a journal entry indicating that appellant's pleadings contained "flaws" and advised appellant to retain legal counsel.

{¶5} Appellant did not retain counsel and appeared at the January 21, 2025 hearing by Zoom.  The hearing was conducted by Judge Laina Fetherolf- Rogers.  Attorney Amanda K. Miller appeared on behalf of the Vinton County Prosecuting Attorney's office for South Central Ohio Child Support Enforcement Agency, "CSEA."  We set forth the pertinent portions of the January 21, 2025 hearing transcript as follows:[1]

| | |
|---|---|
| Court: | Baldwin v. Baldwin.  [W]e're set today on the motions that you filed.  I'm going to need you to tell me what it is you're asking the Court for this morning, and then we'll discuss it. |
| Appellant: | [T]he only thing I'm asking for I don't fully—still fully know, but I believe that the Court- - that the whole case is discharged, and the Court basically has no control over whatsoever.  I was—I filed the motions to make sure of that.  And then get–an entry to that effect so that I can file an appeal to that effect…([indiscernible- poor audio/simultaneous speech] back to that.  I didn't think you would have it.  Yes, I was just looking for an entry to verify that the Court no longer has jurisdiction over the case. |
| Court: | The Court does have jurisdiction over your case.  It's my understanding there's still money owed in the child support case. |
| Appellant: | Okay.  See, that's what I saw, and- and the lawyer's been |

---

[1] The dialogue set forth has been "cleaned up" of "uh" and "um."  Some capitalization and punctuation have been altered.

talking to her and telling her that it was. So, that's like, that's what I saw. Because it's- - because it hadn't been fully discharged because of the arrears, and that part of it should still…be considered at the Court.

Court:         That's correct.

Appellant:   Okay. So, they- - I'm requesting then in my motion the other day I'm—trying to request, so yesterday I [indiscernible - - poor audio]. I get confused easily when - - I'm nervous. I'm requesting an administrative review.

Court:         Have you filed - -

Appellant:   - - for a possible modification is possible.

Court:         Are you asking for the amount - - the total amount to be reviewed, or the payment to be reviewed?

Appellant:   The - - I guess both.

Court:         So, what I can tell you is, we can't change the total amount due now because this is an arrearage only case. If you wanted a modification about the amount of child support you owed, you would have needed to do that back when that was determined when your children were still minors, and that - -was due and owing as a current payment. Does that make sense?

Appellant:   Yes…So I thought that as well. So - -

The Court:   As far as the arrearage payment, we could discuss that. How much are you currently asked to pay?

Appellant:   To be honest, I have no idea. [Indiscernible- poor audio] I think it's the original order. I believe it was 400 and 30 some a month with a protected order of 50.

Ms. Miller:  It's $441.48 is his current monthly amount owed…

The Court:   Okay.  Per the agency, it's $441.48 and that's on arrearages?

Appellant:   Okay.  That sounds right.

Ms. Miller:   Arrearages.

Court:   Okay.  How much arrearage is owed?

Appellant:   $29,593.38.

Court:   So, probably the amount is so high, Mr. Baldwin, because you have such an enormous arrearage.

Appellant:   Yes. Yes.  I'm- - grossly aware of that.

Court:   You're probably also aware that they could have filed for felony non-support on you at some point in time for this.

Appellant:   Yes. And I'm kind of, sort of wondering why they didn't.

Court:   That would have been a decision for whatever prosecutor was in place at the time.

Appellant:   Okay.

The Court:   I don't have an answer for that…different counties.  I've worked in several different counties, and they all have different philosophical viewpoints about whether or not it's worth their time to file for felony non-support is what I can tell you.  Based on what the Court can do as - - as a disciplinary action for felony non-support.  So, is there an amount that you believe you could pay each month?

Appellant:   At this moment, no.  I'm - - I don't have any money at all.  I'm completely desolate.  Can't even work.  I don't have my driver's license.

Court:   You could work without a driver's license.  People do that all the time.

Appellant:     Now with my disabilities I can't. No one will hire me because it's [indiscernible- poor audio].

Court:         Have you been determined to be disabled by either the VA or through the federal government such that you receive disability?

Appellant:     No.

Court:         Do you have a med - -

Appellant:     Only through a neurologist.

Court:         Do you have a medical statement from that neurologist that you could provide to the agency showing that you're unable to work?

Appellant:     Yes, I should be able to.

Court:         And I believe they have a form for that they would ask you to have that neurologist fill out and submit it back to them.

Appellant:     Okay.

Court:         Correct?

Ms. Miller:    If he can work.

Court:         So, the caseworker can mail that out to you. Is this a good address that you provided to the Court?

Appellant:     Yes….

The Court:     They will send that form out to you and you need to have your doctor fill it out. I'm going to set this case out for a couple of months, and we'll find out. If that has not been done, we could perhaps discuss modifying the monthly amount, but ultimately, if you don't have a medical statement that you're disabled, I'm going to anticipate

> that you need to figure out a way to get a job and pay this back support. These children are now adults, and it appears that they were primarily financially support by their other parent pretty much their entire lives here. So, if you are medically unable to work, provide documentation of that, and we'll go from there. If you are not, then at that time you're likely to continue to have to pay these arrearages. Is that clear?

Appellant:   Yes.

Court:      Alright. I will have them send that form to you and you'll get a notice of a future hearing in the mail. Okay?

Appellant:   Okay.

Court:      Alright. Have a good rest of your day, Mr. Baldwin.

Appellant:   Alright. Thank you.

{¶6} The matter was assigned another pretrial hearing date of April 7, 2025. On February 10, 2025, appellant filed a Motion for Temporary Driving Privileges. However, the April 7, 2025 hearing did not proceed.

{¶7} On April 24, 2025, the trial court filed the appealed-from Entry of Dismissal. The entry stated as follows:

> At the January 21, 2025 pretrial, the Court explained to Mr. Baldwin that the amount owed could not be modified retroactively. Further, Mr. Baldwin argued that he could not work due to medical reasons. He was advised to submit documentation of his medical issues to the agency. No documentation was submitted. At the April 7, 2025 pretrial, he advised court staff although he is not represented, he is working with an attorney who advised him he did not need to submit anything as there were no contempt actions pending.

Mr. Baldwin seems to be under the misapprehension that he does not need to support his motions, but instead the agency needs to send him information beyond his significant arrearages to justify the suspension of his license as authorized by Ohio law. The Court advised him of what information he needed to submit to consider returning his license, and he declined. Therefore, his pending motions are dismissed without prejudice.

{¶8} This timely appeal followed.

ASSIGNMENTS OF ERROR

I.    JUDGE FETHEROLF-ROGERS FAILED TO DISMISS HERSELF UNDER CONFLICT OF INTEREST.

II.   THE COMMON PLEAS COURT ERRED IN DISMISSING THE CASE WITHOUT HEARING ARGUMENTS.

III.  THE COURT ERRED BY ALLOWING THE VINTON COUNTY PROSECUTOR'S OFFICE TO REPRESENT THE PLAINTIFFS.

IV.   THE COURT ABUSED ITS POWER BY CONDUCTING ARGUMENTS FOR THE PLAINTIFFS AND USING THREATS TO ADVANCE A DISCOVERY FOR CSEA.

V.    THE COURT ERRED WHEN IT DID NOT CONDUCT THE PRE-TRIAL HEARING SCHEDULED ON APRIL 7, 2025.

VI.   THE TRIAL COURT ERRED WHEN USING HEARSAY IN ITS DECISIONS.

VII. THE COURT ERRED BY ALLOWING SUMMARY JUDGMENT FOR THE APPELLANT WHEN THE PLAINTIFFS DID APPEAR OR GIVE CAUSE.

<u>Assignment of Error One - Alleged Conflict of Interest/Failure to Recuse</u>

{¶9} Appellant asserts that Judge Fetherolf-Rogers has a long-term personal and professional relationship with appellant's prior legal counsel, Attorney Trecia Kimes-Brown. Appellant argues that Attorney Kimes-Brown was also the attorney for CSEA of Vinton County during the "modification that resulted in the arrears the appellant is attempting to dispute." Appellant cites Rule 2.4(B). Under the Ohio Code of Judicial Conduct, Rule 2.4(B), External Influences on Judicial Conduct, "[a] judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment."

{¶10} We begin by noting that R.C. 2701.03 establishes procedures for filing an affidavit of disqualification against a common pleas judge. *See In re Criminal Charges Against Groves*, 2018-Ohio-1406, at ¶ 18 (4th Dist.). R.C. 2701.03(A) provides:

> If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party

to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court in accordance with division (B) of this section. *See State v. Dean*, 2015-Ohio-4347, ¶ 222.

{¶11} Further, Ohio Constitution, Article IV, Section 5(C) provides: "The chief justice of the supreme court or any judge of that court designated by him shall pass upon the disqualification of any judge of the courts of appeals or courts of common pleas or division thereof." This provision vests exclusive authority in the chief justice or her designee to pass on disqualification matters. *Dean, supra*, at ¶ 223. *See Beer v. Griffith,* 54 Ohio St.2d 440, 441-442 (1978). The Supreme Court has repeatedly held that a defendant who could have raised a judicial bias claim in a timely affidavit of disqualification under R.C. 2701.03 to the Chief Justice, but failed to do so, is " ' "foreclosed from bringing such a complaint," ' " on appeal. *Dean, supra,* at ¶ 223, quoting *State v. Osie*, 2014-Ohio-2966, ¶ 65, quoting *State v. Moore*, 93 Ohio St.3d 649, 650 (2001). *See Groves,* at ¶ 21.

{¶12} While a reviewing court must presume that the trial court applied the law correctly, *see State v. Combs,* 180 Ohio St.3d 123, 125 and *State v. Jones*, 2025-Ohio-4317, at ¶ 58 (4th Dist.), we also presume that Judge Fetherolf-Rogers is familiar with the Ohio Rules of Professional Conduct and complies with the rules. Here, Judge Fetherolf-Rogers apparently found nothing in the alleged personal or professional relationship

with Attorney Kimes-Brown which would cause improper influence on her judicial conduct or judgment and which would prevent her from presiding over the underlying matter. Thus, we reasonably conclude that is why Judge Featherolf-Rogers did not recuse herself.

{¶13} Moreover, appellant failed to bring his conflict of interest claim in an affidavit for disqualification under R.C. 2701.03. Therefore, he is "foreclosed from bringing it" on appeal. Having found no merit to appellant's first assignment of error, it is hereby overruled.

{¶14} For ease of analysis and because the arguments are interrelated, we will consider appellant's second, fourth, and fifth assignments of error jointly.

Assignment of Error Two - Dismissal without a Proper Hearing

Assignment of Error Four - Alleged Abuse of Power

Assignment of Error Five - Failure to Conduct April 7, 2025 Hearing

{¶15} Under the second assignment of error, Appellant's first argument is that the trial court's November 26, 2024 entry scheduling a later hearing provided that "verbal arguments would be heard." Appellant directs us to Civ.R. 7(B) and contends that the case was improperly dismissed. Under the fifth assignment of error, again citing Civ.R. 7(B), appellant argues that the trial court's failure to conduct the April 7, 2025 hearing

deprived him of his ability to argue, to respond to any arguments of Plaintiffs, and to file a motion for summary judgment.

{¶16} Under the second assignment of error, appellant also argues that during the January 21, 2025 hearing, the trial court prevented him from "presenting and defending his arguments." Under the fourth assignment of error, appellant contends that throughout the January hearing, Judge Rogers "continuously" made statements and argued on behalf of the Plaintiffs and "threatened" that appellant could be prosecuted for non-payment of arrears. Further, appellant argues that Assistant Prosecutor Miller added to "the underlying severity of further attempts at entering argument."

{¶17} Civil Rule 7(B)(2), motions and pleadings, provides that "*[t]o expedite its business,* the court may make provisions by rule or order not inconsistent with these rules for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition." (Emphasis added.). As set forth above in the factual and procedural background, appellant was advised that he needed to provide documentation of his medical condition. This documentation was necessary to support his claim that he is unable to work and possibly be granted a modification of his arrearage payments and reinstatement of

driving privileges. The trial court gave him over two months to do so. Appellant failed to provide the requested information.

{¶18} The trial court explained its reasoning for the dismissal in the April 24, 2025 entry. In our view, the trial court implicitly concluded that without the supporting documentation, appellant's verbal arguments would be without merit, fruitless, and a waste of judicial resources. It is well-established that a trial court has "inherent authority to control its own docket and manage the cases before it." *Teays Valley Local School District Board of Education v. Struckman*, 2023-Ohio-244, at ¶ 48 (4th Dist.)(internal citations omitted).

{¶19} Appellate courts review "a trial court's orders regarding docket and case management for an abuse of discretion." *See Teays Valley, supra*, at ¶ 46. Given appellant's failure to provide supporting documentation for his medical condition, it is reasonable to conclude that appellant would not be making arguments relevant to the claim. It is also reasonable to conclude that, in light of the non-produced supporting documentation, the assistant prosecutor, on behalf of CSEA, would not need to appear or respond.

{¶20} It is axiomatic that the credibility of witnesses is determined by the trier of fact. *See State v. Meeks,* 2015-Ohio-1527, at ¶ 78 (4th Dist.), citing *State v. Yarbrough,* 2002-Ohio-2126, at ¶ 79. We defer to the trial

court's credibility determinations because the trial court is in the best position to view a witness or party's demeanor, voice inflections, and body language. *See A.V. v. McNichols,* 2019-Ohio-2180, at ¶ 23 (4th Dist.). In our view, the trial court reasonably determined that appellant would simply use the April hearing to ask for additional time to obtain the documentation and, possibly, improperly delay the proceedings. Based upon our review, we cannot find that the trial court abused its discretion in resolving appellant's pending motions by the April 24, 2025 entry of dismissal, as argued within assignments of error two and five.

{¶21} Appellant also claims that the trial judge abused her power and prevented him from presenting and defending his arguments, threatened him, and allowed the prosecutor to speak on behalf of plaintiffs. We must point out that our review is restrained by a cold record. We cannot, as an appellate court reviewing a transcribed record, which has been set forth above, conclude that the trial court cut him off, threatened him, or otherwise squelched his ability to present evidence.

{¶22} Based on the foregoing, we find the trial court did not exhibit an abuse of power and did not abuse its discretion by dismissing the case via judgment entry. Thus, we find the second, fourth, and fifth assignments of error are without merit. Accordingly, all are overruled.

<u>Assignment of Error Three - Alleged Improper Legal Representation</u>

{¶23} Appellant next argues that the Vinton County Prosecutor's Office does not have jurisdiction to represent CSEA or plaintiffs in civil matters. Subject matter jurisdiction refers to a court's power to hear and decided a particular case on its merits. *See State v. Mitchell,* 2021-Ohio-4386, at ¶ 10 (4th Dist.) (Citations omitted). Personal jurisdiction refers to the court's power to render a valid judgment against a particular individual. *See Francis v. Contractor Services, Inc.,* 2025-Ohio- 5873, at ¶ 46 (4th Dist.); *State v. Henderson,* 2020-Ohio-4784, at ¶ 36.

{¶24} Appellant contends that the court erred when it allowed Assistant Prosecutor Miller to represent the plaintiffs in the motions hearing. We interpret appellant's assignment of error as arguing that the Vinton County Prosecutor's Office did not have authority to represent CSEA or Bridget. Black's Law Dictionary, Abridged Sixth Edition, defines "authority," in part, as "Permission…Right to implement and enforce laws; to exact obedience." Appellant's argument is without merit.

{¶25} The Ohio General Assembly created the office of child support in the department of job and family services and required each county to have a child support enforcement agency. *See* R.C. 3125.01, et seq.; R.C. 3125.10; *Lyons v. Lyons*, 2009-Ohio-6868, at fn3 (3d Dist.); *Seelbaugh v,*

*Common Pleas Court of Montgomery County,* 2024-Ohio-5705, at ¶ 15 (2d Dist.).[2]  The state programs were "to be designed 'for the purpose of enforcing the support obligation owed by absent parents to their children.' " *Cuyahoga Cty. Support Enforcement Agency v. Lozada*, 102 Ohio App.3d 442, 446, quoting 42 U.S.C. 651.  CSEA has the ability to appear as a party before the courts to ensure that both a child's interests are protected, as well as the pecuniary interest of the state.  *See e.g., Delaware County Child Support Enforcement Agency v. Kise,* 2021-Ohio-915, at ¶ 22 (5th Dist.); *Saari v. Lorain Cty. Child Support Enf't Agency*, 2011-Ohio-2198, ¶ 7 (9th Dist.), citing *Cuyahoga Cty. supra*.

{¶26} CSEA is required to enforce child support orders in Vinton County, Ohio, consistent with Title IV-D of the Social Security Act and state law.  CSEA is not only entitled to collect the support arrearages, but also required by law to do so.  *Lyons,* at ¶ 31; R.C. 3123.14.  *See also* O.A.C. 5101:12-50-50 (amplifying the judicial enforcement procedures the CSEA may take under R.C. 3123.14).  Ohio's statutes require support payments to be forwarded to the appropriate CSEA by the parent/obligor whether or not a child receives public assistance.  *See* Weber v. Weber, 2000 WL 1682945

---

[2] "The child support enforcement agency for a county is the local Title IV-D agency for the county and shall operate a program for support enforcement in the county that complies with Title IV-D of the "Social Security Act," *Seelbaugh, supra,* citing 88 Stat. 2351 (1975), 42 U.S.C. 651, as amended, any rules adopted pursuant to that title, and state law."  R.C. 3125.11.

(4th Dist.), at *3.  The CSEA in turn disburses the proper amount to the

parent/obligee.  *Id*. The CSEA possess a legitimate government interest in

assuring that all parents/obligors satisfy all child support orders.  *Id*.

(Citations omitted.)

{¶27} R.C. 309.09(A) provides that "[t]he prosecuting attorney shall

be the legal adviser of the board of county commissioners…"  Thus, it is

obvious that the Vinton County Prosecuting Attorney's office is entitled to

appear on behalf of CSEA and Vinton County's Department of Job and

Family Services, county agencies operating under the auspices of the Vinton

County Board of Commissioners.  Appellant's third assignment of error is

overruled.

Assignment of Error Six - Improper Admission of Hearsay

{¶28} Appellant asserts that the trial court based its decision

dismissing his motions on improper hearsay information gathered by the

court's staff.  He argues this was demonstrated in the court's entry of

dismissal when the court wrote:  "At the April 7, 2025 pretrial, [appellant]

advised court staff although he is not represented, he is working with an

attorney who advised him he did not need to submit anything…"  The CSEA

argues in its brief in response that appellant misunderstands the hearsay rule,

Evid.R. 802.  We must agree.

{¶ 29} " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement."  Evid. R. 801(C).  Generally, hearsay is not admissible.  *State v. Douglas,* 2025-Ohio-2250, at ¶ 35 (4th Dist.).  As the responsive brief points out, an evidentiary hearing did not occur.  Thus, we agree that the "hearsay rule" has no application to appellant's argument regarding the judge's language in the dismissal entry.

{¶30} We are mindful that appellant was pro se below and is also pro se on appeal.  However, "[i]t is well-established that pro se litigants are held to the same rules, procedures, and standards as litigants who are represented by counsel."  *Woods v. Best,* 2025-Ohio-357, at ¶ 24 (4th Dist.) (Citations omitted.)  "Litigants who choose to proceed pro se are presumed to know the law and correct procedure and are held to the same standards as other litigants."  *Matter of H.A.H.*, 2018-Ohio-3446, ¶ 18 (4th Dist.), citing *Capital One Bank v. Rodgers,* 2010-Ohio-4421, ¶ 31 (5th Dist.).  At least one court has observed that bailiffs are conduits between attorneys and judges and, in that capacity, bailiffs relay information to attorneys on any number of issues.  *See First National Bank of S.W.Ohio v. Doellman,* 2006-Ohio-1663, at ¶ 16 (12th Dist.).  Attorneys often rely upon the representations of a bailiff.  *Id*.

{¶31} In the underlying proceedings, appellant functioned as his own attorney. Throughout his brief, he has made sweeping accusations of the court's unfairness. Whether or not he spoke to a bailiff, the judge's secretary, or some other court personnel, appellant has directed us to no authority to support his argument hereunder. Indeed, "it is our duty to assume that such court acted in accordance with law unless the record shows the contrary." *Marietta v. Verhovec,* 2020-Ohio-7020, at ¶ 17 (4th Dist.) (Citations omitted.) Furthermore, we are not required to construct appellant's arguments for him. *See generally Citibank, N.A. v. Hines,* 2019-Ohio-464, at ¶ 111 (4th Dist.).

{¶32} Based on the foregoing, the sixth assignment of error is without merit. It is hereby overruled.

### Assignment of Error Seven - Summary Judgment

{¶33} Appellant argues that under Civ.R. 56, the trial court has the ability to grant summary judgment when an opposing party does not answer or give explanation. Here, he asserts that Bridget's absence was unexplained at both hearings. Appellant concludes that when the trial court did not conduct hearings in which appellant was able to present arguments, the trial court denied his ability to file for summary judgment based on

Bridget's absence. Appellant misunderstands summary judgment motion practice.

{¶34} In response, CSEA argues that summary judgment was inapplicable and even if one had been filed, under appellant's reasoning, judgment to him would have been denied. Further, there was no reason for Bridget to attend the January and April 2025 hearings as appellant's arrearages could not be reduced pursuant to statute. CSEA is correct.

{¶35} In *Marietta v. Professional Service Industries, Inc.,* 2025-Ohio-1530, at ¶ 15, we explained:

> Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Barclay Petroleum*, ¶ 16; Civ.R. 56(C); *DIRECTV, Inc. v. Levin,* 2010-Ohio-6279, ¶ 15. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor. Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). To meet its burden, the moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher* at 293, 662 N.E.2d 264.

In addition, failing to respond to a motion for summary judgment does not automatically mean the movant prevails.  *See Marietta v. Verhovec*, 2020-Ohio-7029, at ¶ 30 (4th Dist.); *Bennett v. Mechell,* 2008-Ohio-1287, at ¶ 13 (4th Dist.) (as the burden is upon the moving party to establish the non-existence of any material factual issues, the lack of a response by the opposing party cannot, of itself, mandate the granting of summary judgment); *see Morris v. Ohio Cas. Ins. Co.,* 35 Ohio St.3d 45, 47 (1988).

{¶36} The underlying matter is not one which could be resolved in summary judgment.  Appellant is gravely mistaken if he somehow assumed that since his children have reached majority, the law provides that the child support arrearages would or could be waived due to Bridget's failure to attend the January and April 2025 hearings in this matter.  *See Geter v. Geter,* 2022-Ohio-2804, at ¶ 56  (2d Dist.) (The bill analysis for 2000 S.B. 180, concerning R.C. 3123.14, states that "[t]he act provides that the termination of a court support order or an administrative child support order does not abate the authority of a court or CSEA to…collect arrearages under the terminated  support order.").

{¶37} For the foregoing reasons, appellant's seventh assignment of error is without merit and is also overruled.

{¶38} Having found no merit to any of appellant's assignments of error, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to appellant.

The Court finds there were no reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Vinton County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**